UNITED STATES of America

v.

**Frank Dave CLARK.**

**Crim. No. 91–0671.**

United States District Court,
District of Columbia.

June 24, 1992.

James Meade, Asst. U.S. Atty., Washington, D.C., for government.

Michael Wallace, Federal Public Defender Service, Washington, D.C., for Clark.

SENTENCING MEMORANDUM
AND ORDER

THOMAS PENFIELD JACKSON,
District Judge.

This routine drug case, made entirely by the District of Columbia's Metropolitan Police Department on the basis of evidence its officers recovered in execution of a D.C. Superior Court search warrant, is a duplicate of scores of others prosecuted as federal crimes in this U.S. district court in recent months.

Defendant Frank Dave Clark, a 28–year old high school dropout and lifelong resident of the District of Columbia, was arrested in October, 1991, following a search of his apartment in which drug paraphernalia, a quantity of rocks of "crack" cocaine totalling 9.22 grams, and a 9–mm. pistol were found in a dresser drawer. The search warrant was issued on the basis of information supplied by confidential informants who identified Clark as a neighborhood dealer. Clark was convicted in a bench trial in March, 1992, of possession of "crack" with intent to distribute it, and possession of a firearm by a convicted felon; he was acquitted of using and carrying a firearm during a drug trafficking crime.

Clark's prior convictions—all in D.C. Superior Court—are for robbery and assault with a dangerous weapon (1984); manslaughter (1985); and attempted distribution of cocaine (1989). As the Presentence Report discloses, those prior convictions require that Clark be classified pursuant to U.S.S.G. § 4B1.1 for federal sentencing purposes as a "career criminal." He was on parole supervision when arrested for the instant offenses, and had been at liberty for less than two years at the time. The Guidelines arithmetic thus assigns him a "criminal history category" of VI and a "total offense level" of 37, which together call for imposition of a minimum Guidelines sentence of 360 months (i.e., 30 years) to life in prison without parole.

Defendant takes no exception to the arithmetic. He does, however, move for downward departure, based upon "special circumstances," specifically, his extraordinarily dismal childhood and adolescence,

see United States v. Lopez, 938 F.2d 1293, 1297 (D.C.Cir.1991), and on the ground that his criminal history category significantly overrepresents the seriousness of his past criminal conduct and the likelihood of its repetition. See United States v. Beckham, No. 91–3051, 968 F.2d 47, 53–55 (D.C.Cir. 1992).

The government opposes a downward departure. It submits that, as lamentable as the circumstances of Clark's formative years may have been, they were not atypical; many, if not most, drug offenders have similar backgrounds. In fact, the government says, a proposed Guidelines amendment now pending before Congress would expressly disallow departures for childhood deprivations.[1]

Excerpts of the defendant's juvenile record have been filed with the Court. Those records disclose that Clark first came to the attention of District of Columbia juvenile authorities as a "child in need of supervision," a repeat runaway from home at the age of 11 years. He was the oldest of six children of a 29–year old unemployed alcoholic mother on public assistance who reportedly beat him. His natural father had been slain when he was an infant, and his siblings were fathered by various other men. Thereafter Clark had multiple encounters with the juvenile criminal justice system as a teenager, and was committed to juvenile residential institutions on numerous occasions, each time to be returned on his release to a family home in which he refused to remain.

Clark quit attending high school in 1981 at the age of 17. Such brief periods of lawful employment as he has had since leaving school have been as a cook. Otherwise he has been unemployed, and his livelihood likely provided, at least in part, by dealing in narcotics. He has spent a fair proportion of his short adulthood in prison. His first arrest, at 18, was for manslaughter (reportedly committed in defense of a family member) and, apparently while awaiting trial on that charge, he was arrested for a street robbery of a small amount of cash. A 10–year D.C. prison sentence began for him in June, 1984, and ended with his parole in December, 1987, which was revoked 11 months later, following his arrest for attempted distribution of cocaine in August, 1988. He was reparoled in December, 1990, with an anticipated parole termination date in October, 1995. That parole, too, however, has been revoked as a consequence of the current charges, leaving him with substantial backup time to be served on his D.C. sentences on all three prior convictions.

If, however, Clark's background and criminal history are typical of small-scale District of Columbia neighborhood drug distributors, as the government asserts, so also are the instant offenses of conviction. He was found to be in possession of less than a third of an ounce of "crack" (packaged, to be sure, for streetcorner sale). The firearm was simply found in the vicinity of the drugs. So far as has been shown to the Court, Clark never fired it nor threatened anyone with it. His case is thus indistinguishable from literally hundreds that pass through this courthouse annually, for which, this Court estimates, the average federal sentence for repeat offenders (a statutory mandatory minimum, it might be noted) is approximately 120 months. For Clark, however, a somewhat fortuitous series of unfavorable coincidences of chronology accounts for the Guidelines-mandated 30 years-to-life prison term without parole he now confronts. He was simply caught and convicted too many times too often in the relatively brief span of his adult life.

The Court has no illusions about the prognosis for Mr. Clark's future were he not to be incarcerated. He is certainly, in the strictest sense of the term, a "career criminal," and can be expected to continue that career when opportunity next presents. He is, however, only a local career criminal (and, by District of Columbia standards, a petty one at that), and to the extent his designation as a federal career criminal under the Guidelines is in-

---

1. The balance of the government's opposition is, in the main, a remonstrance to the effect that the Guidelines are now "the law of the land," and, like it or not, the Court must follow them.

tended to reflect apprehension on the part of the U.S. government of the danger he poses to the country generally, it significantly overrepresents it. The result for him is a sentence disproportionately severe in comparison to that imposed upon even other federal defendants who did exactly as he did, but who will, however (for similar, but in their cases, felicitous accidents of chronology), return to the community far sooner. The sentence is also, the Court is informed, still more greatly disproportionate to the length of any prison term he would have served, prior convictions notwithstanding, had he been charged and convicted for the same offenses in a District of Columbia court under local law.

Title 18 U.S.C. § 3553(b) enables the Court, it has been said, to depart from a Guidelines sentence if it finds, *inter alia*, a mitigating circumstance "of a kind or to a degree not adequately taken into consideration by the Sentencing Commission" in formulating the Guidelines. The Court is unaware of *any* consideration at all having been given by the Sentencing Commission to the unique status of the District of Columbia, in which the United States Attorney for the District of Columbia is also the local prosecutor and, as such, able to exercise far greater control than his counterparts elsewhere over the prison time a defendant will actually serve by electing to prosecute the same criminal conduct in either a local or federal court.

The Court regards that enhanced power of the District of Columbia prosecutor to make unreviewable charging decisions that may so profoundly affect sentencing to be a "mitigating circumstance" within the contemplation of 18 U.S.C. § 3553(b). Therefore, unless and until Congress and the Sentencing Commission make it expressly clear that it is truly the penal policy of the United States to cause the incarceration of petty local offenders, particularly in the District of Columbia, until they are too old and infirm to transgress again, no matter how commonplace their "career criminal" records may be, it should be open to a federal court in the District of Columbia to sentence comparably for comparable crimes having neither a federal connection nor any extraterritorial importance.

It has also been intimated, by the *Beckham* and *Lopez* cases, *supra*, that, in this Circuit, and at least at present, the Guidelines afford some latitude under U.S.S.G. §§ 4A1.3 and 5K2.0 to permit a sentencing court to depart downward for some defendants whose criminal records exaggerate their menace, or those whose "special circumstances" of life may claim compassion, from the unusually hard results of Guidelines-impelled sentences. Availing itself, therefore, of any and all discretion as may be accorded by those authorities, the Court will depart downward in the instant case by disregarding the "career criminal" designation for the defendant Clark. The Court will deem Clark's offense level to be 28, in accordance with the Presentence Report computation, and his criminal history category to be level V. His Guidelines sentence range is, thus, 130–162 months. But, since career offenders are expected to receive sentences "at or near" the maximum, the Court will impose the upper Guidelines limit of 162 months' confinement, as well as those other sanctions customary in such cases.

It is, therefore, this 23rd day of June, 1992,

ORDERED, that defendant's motion for a downward departure from the Guidelines sentence as computed in the Presentence Report is granted as aforesaid; and it is

FURTHER ORDERED, that the defendant Frank Dave Clark is committed to the custody of the United States Bureau of Prisons for a term of 162 months on Count One, and a term of 120 months on Count Three, of the Superseding Indictment filed February 11, 1992, the terms to run concurrently with one another, and to concurrent terms of supervised release of eight and three years on Counts One and Three, respectively, upon terms and conditions separately specified.