UNITED STATES of America, Appellant,

v.

Frank Dave CLARK, a/k/a Tink.

No. 92–3189.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 5, 1993.

Decided Nov. 12, 1993.

John R. Fisher, Asst. U.S. Atty., argued the cause for appellant. With him on the briefs were J. Ramsey Johnson, U.S. Atty., and James A. Meade, Asst. U.S. Atty., Elizabeth Trosman entered an appearance.

A.J. Kramer, Federal Public Defender, argued the cause for appellee. With him on the brief was Michael C. Wallace, Sr., Asst. Federal Public Defender.

Before MIKVA, Chief Judge, WALD and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellee Frank Clark was convicted after a bench trial of one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988), and one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988). At sentencing, the district court departed downward from the prescribed Federal Sentencing Guidelines' ("Guidelines") range of 360 months-to-life and sentenced Clark to 162 months imprisonment on the drug count and 120 months on the gun charge, with the sentences to run concurrently. On appeal, the government challenges both the underlying basis for and the reasonableness of the departure. Because we agree that the district court improperly relied on the "unique status of the District of Columbia" as one of its three grounds for departure, we remand for resentencing.

## I. BACKGROUND

On October 31, 1991, D.C. Metropolitan Police Department officers executed a lawful search of Clark's apartment and found drug paraphernalia, a quantity of rocks of "crack" cocaine in ziplock bags totalling 9.22 grams, and a 9–mm. pistol in a dresser drawer. Following a bench trial, Clark was convicted of one count of possession with intent to distribute crack cocaine and one count of possession of a firearm by a convicted felon;

he was acquitted of using and carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (1988).

Clark, who was twenty-seven at the time of arrest, had previously been convicted of three felonies in D.C. Superior Court. At age eighteen, Clark committed manslaughter, reportedly in defense of his mother. While nineteen and awaiting trial on the manslaughter charge, Clark committed an armed street robbery in which he stole $11, a watch, and jewelry. Finally, three years before the arrest underlying the present conviction, Clark was convicted of attempted distribution of a $20 "rock" of cocaine. Due to Clark's three prior felony convictions, the probation officer's presentence report designated him a "career offender" which carried with it a recommended sentence of 360 months-to-life, based on a "criminal history category" of VI and a "base offense level" of 37. *See* U.S.S.G. § 4B1.1 (1991).[1] While the criminal history category for all "career offenders" is VI, the base offense level corresponds to the statutory maximum for the offense underlying the sentence. *Id.* For offenses with a maximum sentence of life imprisonment, the offense level is 37. *Id.*

Clark submitted a motion for downward departure from the prescribed sentence on the grounds that he lacked guidance and was subjected to physical violence as a child. According to Clark's juvenile records, he was the oldest of six children of a young, unemployed, alcoholic mother on public assistance. The records contain evidence that Clark was physically abused throughout his childhood. His natural father was killed when he was an infant, and his siblings were fathered by various other men. At age eleven, Clark was already a repeat runaway from home. He had numerous encounters with the juvenile criminal justice system as a teenager and was repeatedly committed to juvenile residential institutions.

In a sentencing order dated June 23, 1992, the district court granted Clark's motion for a downward departure from the Guidelines range of 360 months-to-life. To implement the departure, the district court exercised its discretion to disregard Clark's designation as a "career offender." Because the career offender designation had raised Clark's criminal history category from V to VI and his offense level from 28 to 37, the district court imposed a sentence at the upper end of the Guidelines range for a defendant with an offense level of 28 and a criminal history category of V. As a result, Clark received a sentence of 162 months.

The district court based its decision to depart downward on three grounds. First, relying on 18 U.S.C. § 3553(b) (1988), the court held that the unique status of the District of Columbia, in which the United States Attorney for the District of Columbia is also the local prosecutor, was a mitigating factor. Second, the court determined that the career offender designation prescribed by U.S.S.G. § 4B1.1 overrepresented the seriousness of Clark's criminal record within the meaning of U.S.S.G. § 4A1.3, especially since Clark was, according to the district court, only a "*local* career criminal (and, by District of Columbia standards, a petty one at that)." *United States v. Clark,* 794 F.Supp. 425, 426 (D.D.C. 1992). Third, the court pointed to U.S.S.G. § 5K2.0 and the "special circumstances" of Clark's life which justified compassion. *Id.* at 427. The government appeals the district court's downward departure.

## II. ANALYSIS

### A. *Standard of Review*

■ When reviewing departures from the Sentencing Guidelines, we follow the two-part test articulated by the Supreme Court in *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992). First, we exercise our plenary authority to determine whether the sentence was imposed "either in violation of law or as a result of an incorrect application of the Guidelines." *Id.; see* 18 U.S.C. § 3742(a) (1988); *see also United States v. Jones,* 948 F.2d 732, 736 (D.C.Cir.1991). Factual findings supporting the district court's reasoning "will not be disturbed unless clearly erroneous." *United States v. Harrington,* 947 F.2d 956, 957 (D.C.Cir.1991). Second, we must

---

1. The 1991 version of the Guidelines was in     effect at the time of sentencing.

determine whether the extent of the departure from the Guidelines was reasonable. *See Williams,* —— U.S. at ——, 112 S.Ct. at 1120; *Harrington,* 947 F.2d at 957. In assessing the reasonableness of the degree of the sentencing court's departure from the Guidelines, we apply the "arbitrary and capricious" standard. *See United States v. Molina,* 952 F.2d 514, 521 (D.C.Cir.1992).

### B. *Unique Status of the District of Columbia*

■ The district court focused on the unique status of the District of Columbia as one basis for its downward departure. The court was troubled because the sentence recommended by the Guidelines for Clark was "greatly disproportionate to the length of any prison term he would have served, prior convictions notwithstanding, had he been charged and convicted for the same offenses in a District of Columbia court under local law." *United States v. Clark,* 794 F.Supp. 425, 427 (D.D.C.1992). Consequently, the court held that the ability of the United States Attorney for the District of Columbia to control a defendant's sentence by electing to prosecute the same criminal conduct in either federal or local court was a "mitigating circumstance" within the meaning of § 3553(b) of the Sentencing Reform Act of 1984. Section 3553(b) permits a district court to depart from the Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see* U.S.S.G. § 5K2.0, p.s. (authorizing departure in circumstances described by § 3553(b)); *see also United States v. Harrington,* 947 F.2d 956, 957 (D.C.Cir.1991).

We agree with the government that the "unique status of the District of Columbia" is not a mitigating factor within the meaning of 18 U.S.C. § 3553(b). To qualify as "mitigating" a circumstance must be linked to one of the stated purposes of sentencing, *i.e.,* just punishment, adequate deterrence, public protection, or rehabilitation. *See* 18 U.S.C.

§ 3553(a)(2) (1988); *see also United States v. Mason,* 966 F.2d 1488, 1494–97 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992). A routine exercise of prosecutorial discretion cannot rise to the level of a "mitigating circumstance," and there is no doubt that the United States Attorney for the District of Columbia enjoys free rein in deciding whether to prosecute in federal or in Superior Court, where the facts support a violation of both local and federal law. We have already rejected the claim that the government's "arbitrary use" of its discretion to indict defendants under either federal or D.C. law could be a mitigating circumstance within the meaning of § 3553(b). *See United States v. Dockery,* 965 F.2d 1112, 1117 (D.C.Cir.1992). In *Dockery,* we found that, although the Sentencing Commission did not appear to take prosecutorial discretion into account when formulating the Guidelines, the Commission most probably did not intend to intrude into the sphere of constitutionally-permissible prosecutorial discretion. *Id.; see also United States v. Williams,* 980 F.2d 1463, 1467 (D.C.Cir.1992) (unlawful to depart downward due to disparity in sentences imposed on individuals involved in same criminal transaction—departure would impermissibly interfere with prosecutorial discretion to engage in plea bargaining).

Clark argues that the downward departure was an appropriate exercise of the district court's authority to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6) (1988). He seeks to persuade us that because District of Columbia criminal law is ultimately the responsibility of Congress, the district court properly acted to eliminate an unwarranted distinction between two types of federal sentences. However, we have acknowledged that " 'marked divergences' in prison terms may be the consequence of overlapping authority to prosecute offenses arising out of the same conduct." *United States v. McLean,* 951 F.2d 1300, 1303 (D.C.Cir.1991) (upholding sentence of seventeen-and-a-half years for distribution of cocaine due mainly to defendant's career offender status even though defendant might have received much lower sentence in D.C. courts), *cert. denied,* —— U.S. ——, 112

S.Ct. 1775, 118 L.Ed.2d 433 (1992); *see also United States v. Mills,* 925 F.2d 455, 461 (D.C.Cir.1991) (U.S. Attorney for the District of Columbia may choose federal track precisely because it carries more severe sentence), *modified on other grounds,* 964 F.2d 1186 (D.C.Cir.) (en banc), *cert. denied,* — U.S. ——, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992). By conforming the sentences of federal defendants in the District of Columbia to those imposed by the Superior Court, the district court would pull federal defendants in the District of Columbia out of the nationwide net of the Sentencing Guidelines. This in turn would increase sentencing disparity between federal defendants and contravene the Guidelines' goal of achieving sentencing uniformity in federal courts across the country. *See Williams,* 980 F.2d at 1467; *cf. United States v. Wogan,* 938 F.2d 1446, 1449 (1st Cir.) ("[R]educing a defendant's sentence ... to equalize his sentence with one previously imposed on a codefendant promotes, rather than reduces, nationwide disparities by creating a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country." (internal quotes and citation omitted)), *cert. denied,* — U.S. ——, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991).

### C. *Overrepresentation of Seriousness of Criminal History*

■ In departing, the district court also relied on U.S.S.G. § 4A1.3, which authorizes a downward departure from the applicable Guidelines range if "the court concludes that a defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. (1991). The circuits that have confronted the issue unanimously agree that the policy statement in § 4A1.3 permits a downward departure from criminal history category VI for those who would otherwise qualify as career offenders. *See United States v. Beckham,* 968 F.2d 47, 54 (D.C.Cir.1992). Thus the district court was well within its legal authority in basing its downward departure on this factor.

We are, however, somewhat confused by the district court's explanation for its decision. It found that the career offender criminal history category overrepresented the seriousness of Clark's criminal record, but at the same time it stated that Clark "is certainly, in the strictest sense of the term, a 'career criminal,' and can be expected to continue that career when opportunity next presents." *United States v. Clark,* 794 F.Supp. 425, 426 (D.D.C.1992). Simultaneous findings that the criminal history of a defendant is not serious enough to justify sentencing as a career offender, but that he will almost definitely commit more crimes in the future, appear at first glance to be contradictory. Nevertheless, we decline to hold, despite the government's urging, that a downward departure under § 4A1.3 is only appropriate when any type or degree of recidivism is unlikely. Section 4A1.3 is written in the disjunctive and allows the district court to depart downward if it determines that the criminal history category significantly overrepresents *either* the defendant's criminal history *or* the likelihood of recidivism. *See* U.S.S.G. § 4A1.3, p.s.; *see also United States v. Senior,* 935 F.2d 149, 150–51 (8th Cir.1991) (upholding § 4A1.3 departure without considering recidivism); *United States v. Bowser,* 941 F.2d 1019, 1023–25 (10th Cir.1991) (same). *But see Beckham,* 968 F.2d at 54 (dictum stating that downward departure is authorized when criminal history category VI "significantly overrepresents the seriousness of a defendant's past criminal conduct *and* the likelihood of recidivism" (emphasis added)). In addition, it is obviously difficult for anyone, including judges, to gauge with any precision the likelihood of recidivism when years of prison time will intervene before a defendant is returned to the community. Under the current sentencing decision, Clark would be over forty years old when released from confinement. Therefore, while a finding that recidivism is unlikely is not a prerequisite to a departure under § 4A1.3, if the district court decides to discuss recidivism on resentencing, it should consider whether any findings it makes are in fact irreconcilable with a finding that the career offender status overrepresents the

seriousness of the defendant's criminal history.

Although we leave it to the district court's discretion to decide whether the nature and timing of Clark's past offenses are such that they overrepresent the seriousness of his criminal record, we are not persuaded by the district court's argument that Clark's designation under the Guidelines as a career offender overrepresents his danger to the nation because he is a local, and not a national, criminal. There is no intimation in the Guidelines that an offender should be allowed a lesser sentence because he commits his crimes within a certain radius; a downward departure would not be warranted for a serial killer who operates in one neighborhood alone.

### D. Domestic Violence and Lack of Guidance as a Youth

The district court's final ground for departure appears to be based on a combination of Clark's status as a child victim of domestic violence and an almost total lack of parental (or other) guidance in his youth.[2] These are cited as mitigating factors not adequately taken into consideration by the Sentencing Commission. See 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, p.s. Subsequent to Clark's sentencing on June 23, 1992, the Guidelines were amended by § 5H1.12 to eliminate lack of guidance as a youth "and other similar circumstances indicating a disadvantaged upbringing" as grounds for departure. U.S.S.G. § 5H1.12, p.s. (effective Nov. 1, 1992); see also United States v. Rivera, 994 F.2d 942, 948–49 (1st Cir.1993) (section 5H1.12 is an explicit exception to basic principle that sentencing court can consider any unusual case as a candidate for departure). Thus, although neither party raised the issue on appeal, to avoid any confusion we must provide the district court with guidance regarding whether it should apply the version of the Guidelines in effect at the time of Clark's offense, or the version of the Guidelines in effect at resentencing.

Under § 1B1.11 of the Guidelines, also effective November 1, 1992, resentencing occurs under the version of the Guidelines in effect at the time of resentencing unless such an application would violate the ex post facto clause of Article I, section 9, of the Constitution. See U.S.S.G. § 1B1.11(a), p.s. (1993); United States v. Hicks, 978 F.2d 722, 726 (D.C.Cir.1992). If there would be such a violation, the court applies the Guidelines Manual in effect on the date that the defendant committed the offense underlying his conviction. See U.S.S.G. § 1B1.11(b)(1). For purposes of ex post facto analysis, the question is whether, if applied retroactively, the amendment would effect any pertinent substantive change that disadvantages the defendant. See United States v. Lam Kwong–Wah, 924 F.2d 298, 304 (D.C.Cir. 1991); Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). We believe it would. Section 5H1.12 removes a substantial amount of judicial discretion to depart downward. Even though Clark had no assurance at the time of his offense that the district court would depart downward because of his severely disadvantaged childhood, the possibility of such a departure existed. Section 5H1.12 unconditionally removed that opportunity. As a result, if the district court finds on remand that Clark's career offender designation does not overrepresent the seriousness of his criminal history within the meaning of § 4A1.3, and the district court is obliged to apply § 5H1.12, Clark would receive a prison term of at least thirty years. The discrepancy in length of prison terms that could thereby result from the retroactive application of § 5H1.12 constitutes a substantive change adversely affecting Clark. See United States v. Molina, 952 F.2d 514, 522–23 (D.C.Cir. 1992) (imposition of a longer prison sentence constitutes substantive change adversely affecting a defendant in violation of ex post facto clause); see also United States v. Green, 952 F.2d 414, 417 (D.C.Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992); accord United States v. Johns, 5 F.3d 1267 (9th Cir.1993) (retroactive

---

2. Although the district court did not say the magic words "lack of guidance as a youth," it departed in part due to the "special circum-stances" of Clark's life, which included both violence and an absence of adult supervision. See Clark, 794 F.Supp. at 427.

application of § 5H1.12 to defendant who committed an offense prior to November 1, 1992, would violate *ex post facto* clause). We conclude, therefore, that at resentencing the district court should apply the version of the Guidelines in effect at the time of the offense—October 31, 1991.

We now turn to the propriety of the district court's reliance on Clark's childhood circumstances as a basis for departure. The district court cited our decision in *United States v. Lopez*, 938 F.2d 1293 (D.C.Cir.1991), in which we found that a district court has discretion in certain circumstances to take account of a defendant's background of domestic violence. Provided that the district court makes the necessary findings to support its decision, we find that it has discretion to depart downward to account for Clark's lack of guidance as a youth and history of childhood abuse.

The Guidelines specify that a court may consider whether departure is warranted in any "atypical case," that is, one not falling within the "heartland" of cases the Guidelines sought to address. *See* U.S.S.G. Ch. 1, Pt. A(4)(b), intro. comment; *see also* U.S.S.G. § 5K2.0, p.s. ("controlling decision as to whether and to what extent departure is warranted can only be made by the courts"). Courts may, without limitation, take into account "information concerning the background, character, and conduct of a person convicted of an offense." 18 U.S.C. § 3661 (1988); *see also* U.S.S.G. § 1B1.4. A defendant's lack of guidance and exposure to domestic violence as a youth certainly qualify as "information concerning the background, character, and conduct of a person." *See generally United States v. Floyd*, 945 F.2d 1096, 1099–1102 (9th Cir.1991) (establishing that "youthful lack of guidance" can be a mitigating circumstance). *But see United States v. Haynes*, 985 F.2d 65, 68 (2d Cir. 1993) (noting departure on basis of lack of guidance as a youth not adopted as law of Second Circuit). However, there must be some plausible causal nexus between the lack of guidance and exposure to domestic violence and the offense for which the defendant is being sentenced. *See United States v. Anders*, 956 F.2d 907, 913 (9th Cir.1992) (cit-ing *Floyd*, 945 F.2d at 1099 (finding nexus between defendant's lack of guidance as a youth and his conviction at age twenty-six for conspiracy to distribute and to possess with intent to distribute cocaine)), *cert. denied*, — U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 158 (1993). We leave it to the district court to determine whether a sufficient nexus exists between Clark's lack of guidance as a youth and childhood exposure to domestic violence and his present offenses of possession of cocaine and possession of a firearm by a convicted felon to warrant a downward departure.

■ We note that the district court is also free to consider whether a nexus exists between the circumstances of Clark's childhood and his *prior* criminal offenses, for purposes of determining whether the seriousness of his criminal record is overrepresented under § 4A1.3. *Accord United States v. Floyd*, 945 F.2d 1096, 1099 (9th Cir.1991) (affirming district court's reliance on defendant's lack of guidance as a youth to mitigate seriousness of his criminal history with respect to commission of past offenses). If, for example, the court finds that Clark's exposure to domestic violence and childhood abuse significantly affected his predisposition to commit his first two crimes, which occurred when he was eighteen and nineteen years old, the district court could discount his career offender status. Absent the first two crimes, Clark would not have committed the requisite two prior felony drug or violence-related offenses necessary for designation as a career offender, *see* U.S.S.G. § 4B1.1, and the district court would have additional support for a departure under the overrepresentation prong of § 4A1.3.

Finally, the district court may want to contemplate whether Clark's childhood exposure to domestic violence is sufficiently extraordinary to be weighed under U.S.S.G. § 5H1.3, which states that mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable Guidelines range. *See* U.S.S.G. § 5H1.3, p.s.; *cf. United States v. Lopez*, 938 F.2d at 1298 (declining to decide whether § 5H1.3 provides a general authority to depart in extraordinary circumstances).

We recognize that several of our sister circuits have indicated that § 5H1.3 allows courts to consider childhood abuse as a basis for departure in extraordinary circumstances. *See United States v. Roe,* 976 F.2d 1216, 1218 (9th Cir.1992); *United States v. Vela,* 927 F.2d 197, 199 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 214, 116 L.Ed.2d 172 (1991); *see also United States v. Deigert,* 916 F.2d 916, 919 (4th Cir.1990). On remand, the district court will have the opportunity to flesh out its factual findings regarding Clark's disadvantaged childhood in this regard.

### E. *Reasonableness of Departure*

Our final inquiry involves the reasonableness of the departure. The district court decided to disregard Clark's career offender designation and thus to lower his criminal history category from VI to V and his offense level from 37 to 28.[3] *See* U.S.S.G. § 4B1.1. The court then sentenced Clark at the upper end of the 130–162 month sentencing range for a defendant with a criminal history category of V and an offense level of 28. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

■ The government urges us to find that the sentencing court should have followed the approach dictated in a November 1992, amendment to § 4A1.3 regarding *upward* departures from criminal history category VI. Under that procedure, if there is

> a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate ... the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3 p.s. (1992). We decline to require the district court to follow this procedure (and to depart downward incrementally under criminal history category VI) for two reasons. First, the plain language of § 4A1.3 demonstrates that the scope of the "incremental procedure" is confined to the

unique situation presented by the absence of a criminal history category higher than VI. Moreover, § 4A1.3 provides explicit guidance on the extent to which a court should depart downward when a career offender designation overrepresents the seriousness of a defendant's criminal history; as a reference, the court should use the Guidelines range for a defendant with a lower criminal history category. *Id.; see also United States v. Allen,* 898 F.2d 203, 204 (D.C.Cir.1990). Second, the amendment to § 4A1.3 was not in effect at the time of Clark's offense. Because using the "incremental procedure" to determine Clark's sentence might result in a longer term of imprisonment for Clark, the application of the amended version of § 4A1.3 would be an *ex post facto* violation. *See* Section D, *supra.*

■ We must still determine whether the district court's decision to lower not only the criminal history category (as recommended by § 4A1.3), but also the offense level, was arbitrary and capricious. The district court exercised its discretion to base Clark's sentence on the offense level that would have been in place absent the career offender upward adjustment. We hold that because the district court decided that the career offender designation overrepresented the seriousness of Clark's criminal history, it was not arbitrary and capricious to base Clark's sentence on the criminal history category and offense level that would have been applicable absent the career offender increases. *Accord United States v. Bowser,* 941 F.2d 1019, 1026 (10th Cir.1991); *United States v. Senior,* 935 F.2d 149, 151 (8th Cir.1991).

### III. CONCLUSION

For the foregoing reasons, we remand for resentencing under a proper application of the Sentencing Guidelines. We reject the district court's reliance on the unique status of the District of Columbia as a basis for departure. While we find that the district court has discretion to depart downward under U.S.S.G. § 4A1.3 as well as on the basis of Clark's childhood history of abuse and lack

---

3. The Guidelines require that where the offense underlying conviction is accompanied by a maximum sentence of life imprisonment, a career offender must receive a base offense level of 37. *See* U.S.S.G. § 4B1.1. All career offenders are assigned a criminal history category of VI. *Id.*

of adult supervision, we remand so that the district court may make the requisite findings regarding whether and to what extent departure is .warranted. *See* 18 U.S.C. § 3742(f)(1) (1988).

*It is so ordered.*