**UNITED STATES of America**

v.

**Ronald MOORE, Defendant.**

**Criminal Action No. 00–127(EGS).**

United States District Court, District of Columbia.

June 6, 2002.

Nancy Jackson, U.S. Attorney's Office, Washington, DC, Jensen E. Barber, II, Law Offices of J.E. Barber, P.C., Washington, DC, for plaintiff.

Sean Grimsley, Federal Public Defender for the District of Columbia, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

SULLIVAN, District Judge.

On June 20, 2000, the defendant, Ronald Moore, pled guilty to one count of conspir-

---

**5.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

acy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(iii). Moore was arrested on April 13, 2000, after police surveillance revealed the sale of illegal narcotics in the Museum Square Public Housing Development. Police officers observed the housing development from October 5, 1999 to February 8, 2000. During this period, an undercover police officer purchased crack cocaine from 401 K Street, N.W., Washington, DC, on seventeen occasions from four different individuals, including the defendant. According to the Drug Enforcement Administration ("DEA") Laboratory, the substances purchased by the undercover officer were crack cocaine with a total weight of 15.02 grams. Of this quantity, Moore sold 7.76 grams in the course of eight separate hand-to-hand transactions. Further investigation revealed that Moore supplied the crack cocaine to three other individuals who were involved in the distribution of drugs from the housing complex.

The Court first heard argument on Moore's sentencing on October 14, 2001. The defendant moved for several downward departures, including one based on the argument that Moore's status as a career offender over-represents his criminal history. On October 25, 2002, the Court appointed the Federal Public Defender for the District of Columbia as *amicus curiae* in this matter and requested that *amicus* file a brief addressing whether Moore qualified as a career offender pursuant to U.S.S.G. § 4B1.1. The Court heard argument from the defendant, the United States and *amicus* on May 7, 2002.

Upon careful consideration of the memoranda filed by the parties and by *amicus* in this matter, the entire record herein and the relevant statutory and case law, the Court finds that the career offender status over-represents Moore's criminal history and will, therefore, grant the defendant's motion for a downward departure. Accordingly, the Court will depart downward and sentence Moore in a range consistent with that mandated by the Guidelines, but without the enhancement for his career offender status.

## I. Sentencing Guidelines

Pursuant to the 2001 edition of the *United States Sentencing Commission Guidelines Manual*, the base level offense for the count to which Moore pled guilty is 26. This base offense level is enhanced by two levels pursuant to the plea agreement, which provides for such an enhancement due to Moore's aggravating role as an organizer, leader, manager, or supervisor in this criminal activity. In addition, the presentence report deems Moore a career offender, resulting in an adjusted offense level of 34 because the penalty for the instant offense is punishable by a term of 40 years. *See* U.S.S.G. § 4B1.1. The presentence report recommends, and the Court grants, a three-level reduction in the offense level for acceptance of responsibility. Thus, Moore's total offense level is 31.

Moore has a total of ten criminal history points. On November 1, 1995, he pled guilty in D.C. Superior Court to attempted possession with intent to distribute cocaine. His sentence was suspended and he was placed on 24-months probation. As part of his probation, Moore was to attend the S.T.A.R. drug treatment program. For this conviction, Moore received two criminal history points.

On April 16, 1996, Moore was arrested after he was observed engaging in a drug transaction. He again pled guilty in D.C. Superior Court to attempted possession with intent to distribute cocaine. Following his second arrest, Moore's probation in his first conviction was revoked and he was sentenced to 100 to 300 days. For the second conviction, Moore was sentenced on

March 27, 1998 to one to three years. The sentences were imposed concurrently, and Moore was incarcerated for approximately one-and-a-half years. Moore received three criminal history points for the second conviction.

On August 7, 1997, Moore was arrested and subsequently pled to a misdemeanor charge of attempted possession of cocaine. On December 15, 1997, he was sentenced to 120 days of incarceration. Moore received two criminal category points for this third conviction. Consequently, Moore's previous criminal convictions result in a subtotal criminal history score of seven.

Because Moore was on parole for the sentence imposed on March 27, 1998, at the time the instant offense was committed, two additional points are added to his criminal history score. *See* U.S.S.G. § 4A1.1(d). The fact that Moore committed the instant offense less than two years after he was released from custody on February 10, 1999 for the sentence imposed March 27, 1998 adds an additional point to his score, resulting in a total of ten points, or a criminal history category of V. *See* U.S.S.G. § 4A1.1(e). Moore's career offender status increases his criminal history category from V to VI.

## II. Career Offender Status

Moore concedes that he technically falls within the definition of "career offender status" as defined by U.S.S.G. § 4A1.3. He has two prior narcotics-related felonies and was over the age of 18 at the time the instant drug-related offense was committed.

The Sentencing Guidelines define a "controlled substance offense" to include "possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The commentary identifies the federal inchoate crimes of possession of a listed chemical

with intent to manufacture a controlled substance and possession of a prohibited flask or equipment with intent to manufacture a controlled substance as controlled substance offenses. *Id.*, comment. at 1. Attempted possession with intent to distribute is not discussed in section 4B1.2(b) or in the commentary.

In 1993, in *United States v. Price*, the D.C. Circuit held that inchoate narcotic offenses should not be considered for purposes of determining a defendant's career offender status. 990 F.2d 1367 (D.C.Cir. 1993). However, in 1995, the Sentencing Commission amended its commentary regarding the "career offender" to reject the reasoning of *Price*. *See* U.S.S.G. § 4B1.1, comment. (backg'd.) (Nov.1998). Since the amendment of the commentary, the D.C. Circuit has recognized the Commission's rejection of *Price*. *See, e.g., United States v. Powell*, 161 F.3d 738, 739 (D.C.Cir.1998) (per curiam) (recognizing that Commission intended to include inchoate narcotic offenses); *United States v. Seals*, 130 F.3d 451, 463 (D.C.Cir.1997).

While the Commission's commentary does not specifically address the offenses of attempted possession and attempted possession with intent to distribute, insofar as they are inchoate narcotics offenses, both defendant and *amicus* concede that Moore's previous convictions for attempted possession with intent to distribute qualify as controlled substance offenses for purposes of U.S.S.G. § 4B1.2(b).

## III. Downward Departure on Career Offender Status

Moore moves for a downward departure pursuant to U.S.S.G. § 4A1.3, arguing that the status of "career offender" overstates the seriousness of Moore's criminal history and the likelihood that he will engage in future criminal activity. A downward departure may be warranted either where

the defendant's criminal history category significantly over-represents the defendant's criminal history or where it over-represents the likelihood of the defendant's recidivism.

## A. Over-representation of Criminal History

Moore argues that the status of career offender significantly overstates his criminal history. A downward departure is appropriate where the court deems the defendant's criminal history is "significantly less serious than that of most defendants in the same criminal history category." U.S.S.G. § 4A1.3.

The Sentencing Guidelines enumerate factors that courts may consider in determining whether a defendant's criminal history category under-represents the seriousness of the defendant's past criminal conduct or the danger of recidivism. *Id.* The Guidelines, while noting that a court may also depart downward where a defendant's criminal history is over-represented, do not identify appropriate factors for consideration in a court's evaluation of such requests for downward departures. In assessing whether the career offender status overstates Moore's criminal history, the Court therefore looks to several factors identified by the D.C. Circuit, as well as those described by the Second Circuit.

In *United States v. Spencer*, 25 F.3d 1105 (D.C.Cir.1994), the D.C. Circuit stated that it would not be error for a district court to take into account the "minor nature" of a defendant's prior convictions or extenuating circumstances when assessing whether career offender status over-represents a defendant's criminal history. The *Spencer* court thus reversed the District Court's conclusion that the Court did not have the authority to grant a downward departure where it had found that the defendant's "prior offenses, which were also relatively unaggravated, do not indelibly stamp his as a career offender."

In *United States v. Mishoe*, the Second Circuit set forth a non-exclusive list of factors a sentencing court should consider when deciding whether to grant a downward departure from the career offender guideline. 241 F.3d 214 (2d Cir.2001). The factors include: "the amount of drugs involved in [the defendant's] prior offenses, his role in the offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." *Id.* at 219; *see also United States v. Perez*, 160 F.3d 87, 89 & n. 4 (1st Cir.1998) (court may consider the amount of drugs involved and defendant's role in offense).

The Court finds that several relevant factors weigh in favor of granting Moore a downward departure. In particular, the Court will consider the amount of drugs involved, the fact that all three prior offenses were attempt offenses, the sentences Moore received for his prior offenses as compared to the sentencing range called for by the instant offense, and the amount of time between Moore's previous offenses and the instant offenses, and the increase in Moore's sentence caused by his career offender status. An additional factor urged by the defendant is the nature of the previous offenses, which Moore characterizes as street-level dealing. However, the Court is not convinced that this factor weighs heavily in Moore's favor.

The amount of drugs involved in Moore's prior two felony offenses appears to be relatively small. The DEA Laboratory did not test the narcotics recovered, and, consequently, did not weigh them. However, 28 packets were recovered by the police in the course of Moore's two felony cases, which defense counsel approximated to constitute 3 grams of crack

cocaine. In the instant case, the facts indicate that Moore had approximately 7 grams of crack cocaine, and that the conspiracy was responsible for 15 grams.

Moore's two prior felony convictions are both for attempted possession with intent to distribute. An admittedly anomalous crime, this inchoate crime nonetheless is a felony narcotics-related crime for purposes of the sentencing guidelines. The Assistant United States Attorney argued that the Court should consider that pleas to such "attempted possession" charges were commonly made in D.C. Superior Court in an effort to permit defendants to avoid mandatory minimum sentences. Nevertheless, the Court can not ignore the real difference between inchoate and non-inchoate offenses, and will not assume Moore to be guilty of the completed offense where he pled to the attempted offense. That Moore's prior convictions are for attempted offenses, and that the instant offense is the first time that he has been convicted of a completed crime, suggest that his career offender status may over-represent his criminal history.

Moore also characterizes his previous offenses as "street-level" dealing involving small quantities of drugs and non-violent in nature. *See United States v. Williams*, 78 F.Supp.2d 189 (S.D.N.Y.1999) (a street seller of narcotics, as compared to a wholesale distributor, is involved in nonviolent crime and thus "not the type of offender" pictured by the Sentencing Commission under the category of career offenders). The government counters that it is not unusual for narcotics offenses to be non-violent. The Court is wary of suggesting that consistent street-level dealing is any less representative of a career offender's criminal history. Furthermore, the Court notes that Moore has apparently escalated his criminal behavior, as the instant offense involved a fairly elaborate scheme operating out of a house. Thus, the Court is not convinced that the street-level nature of Moore's previous offenses weighs significantly in favor of his motion for a downward departure.

In contrast, the sentences that Moore received for his previous convictions strongly suggest that a career offender status would over-represent his criminal history. Moore received probation after his first conviction for attempted possession with intent to distribute. After entering a guilty plea to a second charge of attempted possession with intent to distribute, Moore's probation was revoked and he was sentenced to concurrent terms of 100 to 300 days for the first offense and one to three years for the second. He was incarcerated for approximately one-and-a-half years. In both cases, the court placed Moore into the S.T.A.R. drug treatment program in recognition of the fact that he suffered from cocaine addiction.

The Court also considers the fact that Moore's three prior convictions occurred between June 14, 1995 and August 7, 1996. He had no intervening arrests between those convictions and the instant offense, for which he was arrested on April 13, 2000, almost four years after his last contact with the criminal justice system. Furthermore, the two prior felony offenses occurred in approximately the same time period and arose out of Moore's struggle with cocaine addiction during that period.

Finally, the Court considers the increase in the Guideline range caused by Moore's career offender status. With a total offense level of 31 and a criminal history category of VI, Moore faces a sentence of 188 to 235 months. Without the enhancements of the career offender status, Moore would have a total offense level of 25 and a criminal history category of V, resulting in a Guideline sentencing range of 100 to 125 months. Thus, Moore's career offender

status increases his exposure under the Guidelines by approximately 100%.

After carefully considering the nature of Moore's previous felony offenses and the small quantity of drugs involved in those offenses, the approximately four years in between the commission of the previous offenses and the instant offense, the relative length and nature of his previous sentences in comparison with the sentence prescribed by the Guidelines and the extreme effect of the career offender status on Moore's sentencing range, the Court finds that the career offender status significantly over-represents his criminal history.

### B. Likelihood that defendant will engage in future criminal activity

Moore cites *United States v. Clark*, 8 F.3d 839 (D.C.Cir.1993), for his argument that the district court may make a downward departure if it finds that the criminal history category "significantly over-represents ... the likelihood of recidivism." Moore states that his addiction is the main reason for his criminal activity and that he is unlikely to engage in future criminal activity upon release because he will be older. If sentenced within the unenhanced range, Moore will be 43 years old when released from prison, and will have had access to approximately seven years of drug treatment. *Amicus* and Moore argue that, consequently, the likelihood of recidivism is extremely low. The government counters that the likelihood of recidivism is not less because age has no correlation with recidivism. The Court is not persuaded by defendant's argument, but need not reach it as it finds that the career offender status over-represents Moore's criminal history.

### IV. Other Grounds for a Downward Departure

Moore also argues that the Court should downward departure due to his family re-

sponsibility, health concerns and a combination of other factors. At the motion hearing, these bases for departure were essentially conceded by the defendant. Thus, while Moore cited Judge Tatel's concurrence in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), for the proposition that extraordinary family circumstances may warrant a downward departure, defense counsel admitted that Moore's family circumstances were not extraordinary. Similarly, while arguing that his current high blood pressure may be symptomatic of an extant cardiac problem, Moore conceded that this health problem was insufficient to warrant a departure.

### Conclusion

For the foregoing reasons and upon careful consideration of the memoranda in aid of sentencing, the responses and replies thereto and the relevant statutory and case law, the Court hereby finds that the career offender status over-represents the defendant's criminal history category and accordingly **GRANTS** defendant's motion for a downward departure.