USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-2182 UNITED STATES, Appellee, v. FREDERICK ALAN PIERCE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before  Boudin, Circuit Judge, _____________ Aldrich and Bownes, Senior Circuit Judges. _____________________ ____________________ J. Hilary Billings for appellant. __________________ F. Mark Terison, Assistant United States Attorney, with whom Jay _______________ ___ P. McCloskey, United States Attorney, and James L. McCarthy, Assistant ____________ _________________ United States Attorney, were on brief for appellee. ____________________ July 21, 1995 ____________________ BOWNES, Senior Circuit Judge. In this appeal, BOWNES, Senior Circuit Judge. _____________________ defendant-appellant Frederick Alan Pierce challenges, on several grounds, his convictions and sentence for conspiracy to possess cocaine with intent to distribute, 21 U.S.C.  846, and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. 924(c)(1). After carefully considering Pierce's arguments, we affirm. I. I. __ A. Factual Background A. Factual Background ______________________ On June 28, 1993, pursuant to a prior plan, Pierce and a fellow Maine resident, codefendant David Leland Maddox, drove to Lawrence, Massachusetts, in order to purchase four ounces of cocaine. Paul Abraham, an acquaintance of Pierce's who was to "middle" the deal, informed drug enforcement personnel of the arrangements. The sale did not go through. Pierce and Maddox were arrested on Interstate 95 in New Hampshire while returning to Maine. The arresting officers seized $3,333.50 from Pierce; they also confiscated drug paraphernalia and a loaded gun from the car. Maddox subsequently pleaded guilty and became a cooperating witness. B. Procedural History B. Procedural History ______________________ On October 12, 1993, Pierce was arraigned on a two- count indictment charging him with the crimes of conviction. On that same day, Magistrate-Judge Beaulieu appointed Gary M. Growe to represent him. In the ensuing month and a half, -2- 2 problems developed between Growe and Pierce, and, on November 30, 1993, the day before jury selection was to commence, Growe filed a motion to withdraw as counsel. Pierce joined in the motion. The government opposed Growe's request, pointing out that Pierce already had been provided with Jencks discovery material and arguing that Pierce might use the material to create problems for potential witnesses. The district court heard argument on Growe's motion on December 1, 1993. At the hearing, Growe maintained that a personality conflict was compromising his ability to evaluate objectively certain defense theories proposed by Pierce. After spending some time inquiring into the particulars of the problem, the court denied the motion. In so doing, the court described the conflict as "not so great that it results in a total lack of communication preventing an adequate defense." That same day, the court also empaneled the jury for the case. On December 6, 1993, two days before opening statements were scheduled to be delivered, Growe filed a second motion to withdraw. Again, Pierce joined in the motion. On December 7, 1993, the district court held a hearing to address the motion. The essence of Growe's second withdrawal request was that his relationship with Pierce had deteriorated to the point where (1) Pierce was ignoring Growe's advice and talking to the press about the case; and -3- 3 (2) Pierce believed Growe was wrongfully providing the government with "vital information." After inquiring for some time into the basis for the second motion, the court denied it. In so doing, the court pointed out that the case was "literally on the eve of trial." It also stated: "At some point, the Court has to take the position that the whole system just cannot be -- come down to its knees because of the inability of the defendant and counsel to agree on -- on how their case should be tried." The court did, however, grant Growe's motion to withdraw from representing Pierce in another matter that was scheduled to go to trial the following month. The next day, the jury was sworn and trial commenced. On December 10, 1993, the jury returned guilty verdicts on both counts of the indictment. On February 25, 1994, Pierce moved for the appointment of new counsel for sentencing, and on March 16, 1994, the court granted the motion, appointing Pierce's present counsel to replace Growe. Meanwhile, on February 24, 1994, the government filed a complaint seeking civil forfeiture of the $3,333.50 seized from Pierce at the time of his arrest. See 21 U.S.C.  ___ 881(a)(6) (subjecting to civil forfeiture "[m]oneys . . . intended to be furnished by any person in exchange for a controlled substance"). On April 5, 1994, Pierce filed an -4- 4 answer to the complaint. Subsequently, the government withdrew its claim as to $1,000. On October 20, 1994, Magistrate-Judge Beaulieu held a bench trial on the forfeiture action, and on October 25, 1994, he issued an order of forfeiture in the amount of $2,333.50. Judgment entered on October 31, 1994. That same day, Pierce filed a motion to dismiss the criminal case on double jeopardy grounds. On November 1, 1994, the court orally denied the motion to dismiss and proceeded to sentence Pierce. The court first determined that Pierce's base offense level was 18 for the conspiracy conviction. Relying on a 1984 Florida "withheld adjudication" in which Pierce had pleaded nolo contendere to a charge of delivering cannabis, ____ __________ and a 1985 Florida sexual battery conviction, the court then adjusted this level to 32 because it determined that Pierce was a "career offender" under U.S.S.G. 4B1.1 (1994) (person who is more than eighteen years old, stands convicted of a crime of violence or a controlled substance offense, and has two prior felony convictions for either crimes of violence or controlled substance offenses is a career offender subject to an upward adjustment of his base offense level). Because Pierce's criminal history category was VI, see id. (all ___ ___ career offenders have criminal history categories of VI), the applicable guideline range was 210 to the statutory maximum -5- 5 of 240 months. The court then sentenced Pierce to 210 months on his conspiracy conviction, and to the mandatory 60 months consecutive sentence on his firearm conviction, see 18 U.S.C. ___ 924(c)(1) (firearm sentence must be consecutive to the underlying sentence), for a total sentence of 270 months' imprisonment. This appeal followed. II. II. ___ Pierce makes five arguments on appeal: (1) the entry of judgment in the civil forfeiture action bars the instant criminal prosecution under the Fifth Amendment's Double Jeopardy Clause; (2) the denial of the two motions to withdraw constituted an abuse of discretion and led to a violation of his Sixth Amendment rights; (3) the 1984 Florida withheld adjudication was not a "conviction" cognizable under the career offender provisions of the guidelines; (4) the 1985 Florida sexual battery conviction was not a "crime of violence" as that term is defined by the career offender provisions; and (5) a conspiracy conviction cannot predicate a finding that a defendant is a career offender. We discuss each in turn. A. Double Jeopardy A. Double Jeopardy ___________________ Pierce first contends that the Double Jeopardy Clause precluded the government from further pursuing his criminal prosecution once judgment entered in the civil forfeiture action. In Pierce's view, the civil and criminal -6- 6 actions were separate proceedings arising out of the same criminal acts and instituted by the federal government for penal purposes. See United States v. $405,089.23 U.S. ___ _____________ _________________ Currency, 33 F.3d 1210, 1216-22 (9th Cir. 1994) (Double ________ Jeopardy Clause is violated where the same criminal acts give rise to both a criminal prosecution and a separate, civil forfeiture action under 21 U.S.C. 881(a)(6); civil forfeiture under 881(a)(6) is "punishment"); but see United ___ ___ ______ States v. Tilley, 18 F.3d 295, 297-300 (5th Cir.) (deeming a ______ ______ particular civil forfeiture brought under 881(a)(6) not to be punishment), cert. denied, 115 S. Ct. 573 (1994); United _____ ______ ______ States v. One Single Family Residence, 13 F.3d 1493, 1499 ______ ____________________________ (11th Cir. 1994) (viewing a criminal prosecution and an overlapping forfeiture action to be part of "a single, coordinated prosecution"); United States v. Millan, 2 F.3d ______________ ______ 17, 19-21 (2d Cir. 1993) (same), cert. denied, 114 S. Ct. 922 _____ ______ (1994). Besides arguing that we should reject $405,089.23 ___________ and adopt the reasoning of Tilley, One Single Family ______ ___________________ Residence, and Millan, the government responds that the _________ ______ Double Jeopardy Clause, if violated, would bar only the civil forfeiture proceeding, and not Pierce's criminal prosecution. Because we agree with this last argument, we reject Pierce's double jeopardy challenge without deciding whether the forfeiture action was a separate penal proceeding. -7- 7 In relevant part, the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." It is well established that this Double Jeopardy Clause protects against both successive punishments and successive prosecutions for the same criminal offense. E.g., United States v. Dixon, 113 S. ____ _____________ _____ Ct. 2849, 2855 (1993). The Clause does not even potentially come into play, however, until the defendant has first been put into jeopardy. Crist v. Bretz, 437 U.S. 28, 32-33 _____ _____ (1978). And even then, it is only the second proceeding that ______ is constitutionally endangered, for the Clause's basic design is "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for ____ ____ ____ an alleged offense." Green v. United States, 355 U.S. 184, _____ _____________ 187 (1957) (emphasis supplied). Our inquiry therefore reduces to whether Pierce was first subjected to jeopardy for the conduct underlying this action prior to jeopardy attaching in this action. Plainly, _____ __ he was not. It is settled that jeopardy attaches in a criminal jury case when the jury is empaneled and sworn. E.g., Crist, 437 U.S. at 35. Pierce's criminal jury was ____ _____ empaneled on December 1, 1993, and sworn on December 8, 1993, several months prior to the inception of the civil forfeiture proceeding. Thus, any double jeopardy problem arising out of -8- 8 the institution of the civil forfeiture proceeding can only be seen as imperiling that proceeding. Pierce does not challenge any of the legal principles we have set forth; nor does he dispute that jeopardy first attached in the criminal proceeding. Instead, he disagrees with our mode of analysis. Focusing on the Double Jeopardy Clause's prohibition against successive punishments, Pierce contends that the moment of punishment ___________ controls, asserting that "the issue is not so much which jeopardy attaches first as which jeopardy is first complete." Because jeopardy first "became complete," and punishment was first imposed (in the form of the judgment ordering forfeiture) in the civil proceeding, Pierce argues that his sentence in this case is a "successive punishment" precluded by the Clause. We are not persuaded. Pierce's argument that the "completion" of jeopardy triggers the Clause's protections completely disregards the fact that the Clause protects against more than just successive punishments; it also protects against successive prosecutions. To illustrate, if Pierce's argument were correct, he would not have been entitled to assert the double jeopardy bar in the civil forfeiture action because jeopardy had not yet been "completed" in this criminal proceeding. Patently, however, Pierce was so entitled (presuming, of -9- 9 course, that the forfeiture action was both separate and punitive). The Supreme Court has made quite clear that  the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. Green, 355 U.S. at 187. This sentiment, along with the _____ accused's interest in retaining a chosen jury, has fostered the view that jeopardy attaches in a jury trial when the jury is empaneled and sworn. See Crist, 437 U.S. at 35-36. It ___ _____ also has led to the rule that the denial of a motion to dismiss on double jeopardy grounds is immediately appealable. Abney v. United States, 431 U.S. 651, 661-62 (1977).  _____ _____________ Although he does not say so explicitly, Pierce implies that a criminal defendant should have the right to withhold objection to a forbidden successive prosecution and raise a double jeopardy argument only in the event that the second prosecution leads to a prior and less severe punishment than that meted out in the original case. Put another way, a defendant ought to have the option to endure an unconstitutional second trial in the hope that it will both conclude first and lead to a more lenient punishment than that eventually imposed in the first trial, and then to object to the punishment imposed in the first trial on double -10- 10 jeopardy grounds. We cannot locate any authority to support this proposition, and we reject it out of hand. The Double Jeopardy Clause is a shield against the oppression inherent in a duplicative, punitive proceeding; it is not a tool by which a defendant can avoid the consequences of the proceeding in which jeopardy first attached. The law of double jeopardy is quite complicated, and often (as here), the question whether a second proceeding violates the Clause is a close one. Because, under Article III of the Federal Constitution, the question can only be answered in the context of an actual case or controversy, the public has a strong interest in the government being able to institute the second proceeding without risking the first. After all, the government should not be dissuaded from bringing legitimate penal proceedings, and opposing counsel and the courts (including the appellate courts, see Abney, 431 U.S. at 661- ___ _____ 62) are there to protect the defendant's rights if the government has miscalculated. This simply is not a situation where the price to society of allowing a defendant to parlay the government's miscalculation into a "get out of jail free" card is worth the deterrent effect such a regime might have. Pierce's theory of completed jeopardy would effectively trade away some of the most valuable protections of the Double Jeopardy Clause for rather dubious gains. We -11- 11 therefore reject it, and overrule Pierce's double jeopardy challenge to the penalty imposed in this proceeding. B. Denial of Motions to Withdraw B. Denial of Motions to Withdraw _________________________________ Pierce next asserts that the district court's denial of the two motions to withdraw constituted an abuse of discretion and led to a violation of his Sixth Amendment rights. To the extent that Pierce is taking issue with the adequacy of his representation after the denial of the motions, we think that his fact-specific argument should be more fully developed and presented to the district court in the first instance. Accordingly, we decline to address it at this time. See, e.g., United States v. Jadusingh, 12 F.3d ___ ____ _____________ _________ 1162, 1169-70 (1st Cir. 1994) (fact-specific ineffective assistance claims ordinarily ought first be presented to the district court in a 28 U.S.C. 2255 petition). We therefore limit our focus to whether, in light of the then-existing _____________ circumstances, the court erred in denying the motion. Cf. ___ United States v. Torres, 793 F.2d 436, 440 (1st Cir. 1986) ______________ ______ (in evaluating the denial of a motion for a continuance to obtain new counsel, "we must pay particular attention to `the reasons presented to the trial judge at the time the request __ ___ ____ ___ _______ is denied'") (quoting Ungar v. Sarafite, 376 U.S. 575, 589 __ ______ _____ ________ (1964)) (emphasis supplied). We detect no error. In the analogous context of a challenge to a denial of a defendant's motion to substitute counsel, we have stated -12- 12 that we will "consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." United States v. Allen, 789 F.2d 90, 92 ______________ _____ (1st Cir.), cert. denied, 479 U.S. 846 (1986). Of course, we _____ ______ are aware that the trial court has a superior vantage point for evaluating matters such as these; we therefore will reverse only if we perceive an abuse of discretion. See id. ___ ___ We also are mindful that when, as here, the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference. As the Supreme Court has stated: Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to assistance of counsel. Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar, ______ ______ _____ 376 U.S. at 589). -13- 13 In view of all these considerations, the trial court's decisions pass muster. Taking first the final Allen _____ factor, we note that, while Pierce has adduced proof that his relationship with Growe was beset with problems, he has not established a total lack of communication preventing an adequate defense. The record reveals that Growe and Pierce were conversing with one another and had some appreciation for the other's opinions and sensibilities at the time the motions were filed. We therefore have no basis to conclude that the district court clearly erred in finding that the communication between the counsel and client was sufficient to allow a satisfactory defense. Cf. Allen, 793 F.2d at 92 ___ _____ (noting the discretion afforded to trial court determinations regarding substitution of counsel).  Furthermore, when presented with the motions, the court held hearings at which it questioned Growe and Pierce at some length regarding the nature of their problems with each other. We have read the transcripts of these hearings and find the court's inquiries to have been more than adequate. If there is a relative lack of specificity regarding the exact reasons for the difficulties between Growe and Pierce, it is a result of a lack of elaboration on their part. It certainly is not a result of insufficient questioning by the court. -14- 14 Finally, the motions were, by any measure, untimely. Although we appreciate that the docket moves quickly in the District of Maine, the fact remains that Growe waited until the day before empanelment before notifying the court that there was a problem. More importantly, a quick docket does not alleviate the logistical problems engendered by a last-minute continuance. See Morris, 461 U.S. at 11-12. ___ ______ Nor can it allay the legitimate concerns about witness intimidation the government may have when a criminal defendant is in possession of Jencks material well before the inception of trial.  In sum, because the circumstances here were not sufficiently compelling, the district court acted well within its discretion in declining to bring the proceedings to a halt on the eve of trial. We therefore reject Pierce's argument that the district court committed reversible error in denying the two motions to withdraw. C. The 1984 Florida Withheld Adjudication C. The 1984 Florida Withheld Adjudication __________________________________________ Pierce argues that the district court erred in concluding that the 1984 Florida withheld adjudication in which he had pleaded nolo contendere to delivering cannabis ____ __________ constitutes a cognizable predicate conviction for purposes of the relevant "career offender" guideline. See U.S.S.G.  ___ 4B1.1. In Pierce's view, a withheld adjudication simply cannot be regarded as a "conviction" under this guideline -15- 15 because the term "conviction" necessarily implies the entry of a final adjudicatory judgment. A careful reading of relevant guideline language and commentary persuades us that Pierce's argument is incorrect. Although there is surface appeal to the argument that there can be no "conviction" unless and until a final adjudicatory judgment is entered, the sentencing guidelines clearly construe the term differently. Section 4B1.2(3), which defines the terms used in 4B1.1, states: "The date that a defendant has sustained a conviction shall be the date that the guilt of the defendant has been established, whether ___ _____ by guilty plea, trial, or plea of nolo contendere." (emphasis ____ __________ supplied). Thus, there is a textual basis in the career offender guidelines for concluding that a guilt-establishing event (such as a plea where a defendant states that he does not wish to contest the charges), and not the formal entry of an adjudicatory judgment, determines whether and when there has been a countable "conviction."  This view is borne out by the relevant guideline commentary. Application note 4 to 4B1.2 directs the sentencing court to utilize the provisions of 4A1.2 (captioned "Definitions and Instructions for Computing Criminal History") in "the counting of convictions under  4B1.1." Two provisions of 4A1.2 compel the conclusion that withheld adjudications following pleas of nolo contendere are ____ __________ -16- 16 countable convictions under 4B1.2. First, 4A1.2(a)(4) drives home the point that there can be a "conviction" prior to, and therefore without, the formal entry of an adjudicatory judgment: "`Convicted of an offense' for purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." And 4A1.2(f), which ____ __________ governs diversionary dispositions like withheld adjudications, is quite clear that admissions of guilt (or pleas formally declining to contest guilt), rather than formal entries of judgment, control countability:  Diversion from the judicial process without a finding of guilt (e.g., ____ deferred prosecution) is not counted [as a prior sentence]. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo ____ contendere, in a judicial proceeding is __________ counted as a sentence under 4A1.1(c) [of the criminal history guidelines] even if a conviction is not formally entered, except that diversion from juvenile court is not counted. The application note corresponding to the provision is explanatory of its purposes: "Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." 4A1.2, comment. (n.9). -17- 17 Employing an extremely literal reading, Pierce suggests that these guideline provisions are relevant only to the "counting" of convictions, and that they have no bearing on whether a particular event should be "defined" as a conviction. The difference between "counting" and "defining" convictions in this context is, however, only semantic. Section 4B1.1 directs that "convictions" of a certain type be counted, and other guidelines and commentary which elaborate upon the events to be counted essentially define that which is a conviction. In other words, the sentencing court is to "count" whatever is "defined" as a conviction (so long as it is for a crime of violence or a controlled substance offense). When 4A1.2(a)(4) and (f) are applied to the question presented (as 4B1.2, comment. (n.4) dictates), it becomes clear that the diversionary disposition at issue here -- the 1984 Florida withheld adjudication -- should be counted as a conviction under 4B1.1 See United States v. ___ _____________ Jones, 910 F.2d 760, 761 (11th Cir. 1990) (per curiam) _____ ___ ______ (withheld adjudication following a nolo contendere plea ____ __________ constitutes a conviction for career offender status). We therefore reject Pierce's argument that the district court erred in counting the withheld adjudication as a predicate conviction for purposes of the career offender guideline. D. The 1985 Florida Sexual Battery D. The 1985 Florida Sexual Battery ___________________________________ -18- 18 Pierce's fourth argument is that the district court erred in deciding that his 1985 Florida conviction for sexual battery is a "crime of violence" and therefore a cognizable predicate conviction for purposes of 4B1.1. Central to his argument is an assertion that the statute defining the offense for which he was convicted, Fla. Stat. Ann.  794.011(5), does not, inter alia, have as an element "the _____ ____ use, attempted use or threatened use of physical force against the person of another." See 4B1.2(1) (defining ___ phrase "crime of violence" for purposes of 4B1.1). Regardless of whether Pierce is correct about the current _______ version of the statute (a matter on which we express no opinion), a plain reading of the statute under which Pierce was convicted reveals that, in 1985, the use of force was an ___ element of the offense. See Fla. Stat. Ann. 794.011(5) ___ (West 1984) ("A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses physical force and ____ ________ _____ ___ violence not likely to cause serious personal injury is ________ guilty of a felony . . . .") (emphasis supplied). And because the statutory formulation of the predicate crime, and not the actual facts of the case itself, dictates whether the offense is a crime of violence for purposes of the federal sentencing guidelines, see United States v. DeLuca, 17 F.3d ___ _____________ ______ 6, 8 (1st Cir. 1994), our inquiry is at an end. -19- 19 The 1985 Florida sexual battery was a crime of violence under 4B1.2(1). We therefore reject Pierce's argument that the district court erred in counting the sexual battery as a predicate conviction for purposes of the career offender guideline. E. Conspiracy and Career Offender Status E. Conspiracy and Career Offender Status _________________________________________ Pierce's final claim, made solely to preserve the issue for further appeal, is that a conspiracy conviction cannot serve as a triggering or predicate offense for purposes of the career offender guideline. Pierce acknowledges that we recently decided this issue against him, see United States v. Piper, 35 F.3d 611, 616-19 (1st Cir. ___ _____________ _____ 1994), cert. denied, 115 S. Ct. 1118 (1995), and that this _____ ______ panel is duty-bound to follow Piper, see, e.g., Metcalf & _____ ___ ____ _________ Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth., 991 F.2d ___________ ____________________________________ 935, 939 n.3 (1st Cir. 1993) ("in a multi-panel circuit, newly constituted panels, generally speaking, are bound by prior decisions on point"). We therefore reject the claim. III. III. ____ For the reasons stated above, we affirm the convictions and sentence of defendant Frederick Alan Pierce. Affirmed. Affirmed ________ -20- 20