USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2200 UNITED STATES, Appellee, v. FRANK J. LINDIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Edward S. MacColl with whom Thompson, McNaboe, Ashley & Bull was _________________ _________________________________ on brief for appellant. Margaret D. McGaughey, Assistant United States Attorney, with _______________________ whom Jay P. McCloskey, United States Attorney, and Jonathan R. __________________ ____________ Chapman, Assistant United States Attorney, were on brief for appellee. _______ ____________________ April 18, 1996 ____________________ STAHL, Circuit Judge. Pursuant to a plea agreement STAHL, Circuit Judge. _____________ with the government, defendant-appellant Frank J. Lindia pleaded guilty to a one-count indictment charging that, from December 1994 to January 31, 1995, he and codefendants John C. Mosby and Augustine T. Aguirre conspired to possess with intent to distribute in excess of fifty kilograms of marijuana, in violation of 21 U.S.C. 846, 841(a)(1) and (b)(1)(C). On appeal, Lindia claims that the district court erred by: including a negotiated but unconsummated sale of 150 pounds of marijuana in the sentence calculation; sentencing him as a career offender; and refusing to depart downward from the sentence on his claim that the career- offender criminal history category significantly overrepresented his past criminal conduct. I. I. __ Pertinent Background and Prior Proceedings Pertinent Background and Prior Proceedings __________________________________________ A. Facts _________ We accept the facts as set forth in the uncontested portions of the Presentence Investigation Report ("PSR") and the sentencing hearing transcript, see United States v. ___ ______________ Muniz, 49 F.3d 36, 37 (1st Cir. 1995), reciting additional _____ facts below as necessary.  In late 1994, federal and Maine law enforcement authorities, with the help of a cooperating individual (CI), began investigating Lindia's activities. Soon thereafter, -2- 2 the CI (who had been the "buyer" in monitored marijuana transactions) introduced to Lindia an "associate," undercover DEA Special Agent Mike Cunniff, who would handle further transactions. During the ensuing negotiations, Agent Cunniff was introduced to Lindia's associates, Aguirre and Mosby. On January 20, 1995, Agent Cunniff met Mosby at Mosby's home in Jamestown, Rhode Island, where Mosby delivered to Cunniff forty-eight pounds of marijuana. On January 31, 1995, Lindia and Aguirre met Agent Cunniff in Portland, Maine, to receive payment for the marijuana. The meeting took place in a hotel room that government agents had previously set up with videotape equipment. During the meeting, Agent Cunniff delivered $62,400 in cash and commented on the failure of Aguirre and Lindia to accept the payment earlier, as they had promised. Concerned about his customer's unhappiness, Lindia apologized for the delay and indicated that more marijuana was available. The three men then planned for an additional thirty pounds of marijuana to be delivered the next day. Also during the videotaped meeting, Lindia told Cunniff, "We have something else . . . that we would like to send up to you." Both Lindia and Aguirre then spoke of a subsequent shipment of marijuana and indicated that they could probably send Cunniff "about" 150 or 200 pounds, -3- 3 depending upon the capacity of the vehicle in which it would travel.1 Lindia stated that the lot could be delivered in a little over one week's time. After counting out the cash payment for the forty-eight pound lot and discussing details of the next day's thirty-pound delivery, Lindia and Aguirre left the hotel room and were promptly arrested. Lindia eventually pleaded guilty and cooperated with the authorities. B. Sentencing ______________  ____________________ 1. The transcript of this portion of the conversation between Lindia, Aguirre and Agent Cunniff reads, in part: Lindia: And let me ask you another question. We have something else . . . that we would like to send up to you. Now this is going to be Aguirre: What, the [shipment] that's coming Lindia: The one that's coming with . . . Chewy Aguirre: Are you talking about this one that's already Lindia Not this one, the one that's behind it from Chewy Aguirre: Well, we could probably get about Lindia: We could probably get about Aguirre: One and one half, or two even Cunniff: I can handle three, five, or thousand Lindia: This is contingent upon the vehicle that we have at this point. . . . So two would probably be the limit. After discussing delivery matters about this shipment, the discussion continued: Cunniff: How much are we talking about? Lindia: Probably one and half to two . . . . Aguirre: Whatever we can get [in the vehicle]. -4- 4 The district court sentenced Lindia as a career offender under 21 U.S.C. 994(h), including as a predicate offense Lindia's Rhode Island conviction on a nolo contendere ____ __________ plea for possession with intent to deliver marijuana. Under the Career Offender guideline, U.S.S.G. 4B1.1, the court was required to determine the offense statutory maximum in order to ascertain the applicable offense level. Because the court included the negotiated 150-pound lot in the amount of drugs attributable to Lindia, it found the offense statutory maximum to be twenty years' imprisonment under 21 U.S.C. 841(b)(1)(C). Pursuant to the Career Offender guideline, the statutory maximum of twenty years yielded an offense level of thirty-two with a criminal history category of VI. Lindia asked the court to depart downward on the basis that the criminal history category overrepresented his criminal history; but the court refused, specifically ruling that it did not have the authority to do so. The court did grant a three-level downward adjustment in the offense level for acceptance of responsibility, resulting in a total offense level of twenty-nine and a guideline imprisonment range of 151 to 188 months. On the government's motion under U.S.S.G. 5K1.1, the court departed downward from the guideline range for Lindia's substantial assistance and imposed a sentence of 108 months' incarceration. -5- 5 II. II. ___ Discussion Discussion __________ We review the sentencing court's findings of fact for "clear error" and generally defer to its credibility determinations. United States v. Muniz, 49 F.3d 36, 41 (1st _____________ _____ Cir. 1995); United States v. Whiting, 28 F.3d 1296, 1304 (1st _____________ _______ Cir.), cert. denied, 115 S. Ct. 378, 498, 499, 532 (1994). _____ ______ We review de novo the court's interpretation of the __ ____ guidelines and application of law. Muniz, 49 F.3d at 41. _____ A. Drug Quantity Calculation _____________________________ The extent of the penalty for a controlled- substance conviction is determined in large part by the amount of drugs properly attributable to the defendant. United States v. Campbell, 61 F.3d 976, 982 (1st Cir. 1995), ______________ ________ petition for cert. filed, (Mar. 8, 1996) (No. 95-8348). On ________ ___ _____ _____ appeal, Lindia challenges the district court's inclusion of the negotiated but unconsummated 150-pound lot in the calculation of his sentence. Without this quantity, he would have received the benefit of 21 U.S.C. 841(b)(1)(D), which provides for a maximum imprisonment term of only five years "[i]n the case of less than 50 kilograms of marijuana."2 Use of this penalty provision would have yielded, under the  ____________________ 2. 1 kilogram is equivalent to approximately 2.2 pounds. -6- 6 Career Offender guideline, a pre-adjustment offense level of seventeen instead of thirty-two. See U.S.S.G. 4B1.1.3 ___ The PSR stated that Lindia was responsible for 103.5 kilograms of marijuana, representing a combination of the forty-eight pound, thirty-pound, and 150-pound lots.4  ____________________ 3. This challenge is somewhat perplexing in light of the indictment and plea agreement in the record before us. Lindia informs this court that he pleaded guilty to the conspiracy to possess with intent to distribute marijuana but "did not plead guilty to quantity." The indictment to which he pleaded guilty, however, states that the conspiracy was for "in excess of 50 kilograms." Further, both the indictment and the plea agreement cite 21 U.S.C. 841(b)(1)(C) which sets forth a maximum sentence of 20 years as the applicable penalty provision. Indeed, the plea agreement explicitly states that "[t]he parties agree and understand that the maximum statutory penalty which may be imposed upon conviction is imprisonment of not more than twenty years." Nonetheless, Lindia insists that at the change of plea hearing, the court and the parties "understood" that the issue of drug quantity would be left entirely open for sentencing purposes. Incredibly, Lindia does not provide this court with a transcript of the change of plea hearing for our consideration of his claimed material change in the indictment and plea agreement. And nothing in the record before us hints of a superseding indictment or information eliminating the quantity specification. Because the record adequately supports the court's finding that, counting the negotiated 150-pound lot, the marijuana quantity attributable to Lindia was in excess of 50 kilograms, we do not decide whether his plea precluded his challenge to the drug quantity finding. 4. The government points out that, with a total quantity of 103.5 kilograms of marijuana, the five-year mandatory minimum and 40-year maximum in 21 U.S.C. 841(b)(1)(B)(vii) might have applied rather than the 20-year maximum in 841(b)(1)(C). The application of the lower maximum sentence is apparently based on the understanding of the parties and court, as evidenced in the indictment, plea agreement, and PSR, that Lindia would be responsible for a marijuana quantity that would trigger no more than the penalties set for in 841(b)(1)(C). -7- 7 Lindia objected to this conclusion, asserting, inter alia, _____ ____ that the 150-pound lot "never existed" and was not the object of any conspiracy, and that his statements about it constituted mere "puffing" in an attempt to gain Agent Cunniff's business confidence. At the sentencing hearing, Lindia testified that the 150-pound lot had never been previously discussed or planned and that no steps had been taken to obtain it. Lindia repeated that the discussion was meant to impress Agent Cunniff, and testified that only after obtaining payment for the forty-eight and thirty-pound lots did he intend to actually seek the additional 150 pounds of marijuana. The district court found, under a preponderance-of- the-evidence standard, that the proposed delivery of the 150 pound lot had not been discussed or planned before the videotaped meeting. The court also found, however, that based on Lindia's and Aguirre's statements, the 150 pounds of marijuana added to, and were part of, the charged conspiracy. The court found that Lindia and Aguirre intended to produce that marijuana and were reasonably capable of doing so and thus, the 150 pounds were includable in the offense conduct for the purposes of the statutory maximum and the Sentencing Guidelines. Application note 12 of U.S.S.G. 2D1.1 provides: In an offense involving negotiation to traffic in a controlled substance, the -8- 8 weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonable capable of producing. We have interpreted this note as requiring the sentencing court to include the negotiated amount in the drug quantity calculation unless it finds both that the defendant did not have the intent to produce the amount, and that he lacked the capacity to deliver it. United States v. Wihbey, 75 F.3d _____________ ______ 761, 777 (1st Cir. 1996); Muniz, 49 F.3d at 39. Application _____ note 12 applies for the purposes of both the Sentencing Guidelines and the statutory penalties under 21 U.S.C. 841(b). Muniz, 49 F.3d at 39-40 (indicating that five-year _____ difference in statutory mandatory minimum was dependent upon drug quantity calculated under application note 12); United ______ States v. Pion, 25 F.3d 18, 25 n.12 (1st Cir.) (noting that ______ ____ drug quantity finding under note 12 provides threshold calculus for mandatory minimums), cert. denied, 115 S. Ct. _____ ______ 326 (1994). Lindia contends that due process requires the government to prove drug quantity beyond a reasonable doubt. Drug quantity, however, is not an element of the offense of conviction, 21 U.S.C. 846 and 841(a)(1), but is typically -9- 9 relevant only for determining the penalty. See 21 U.S.C. ___ 841(b); United States v. Campbell, 61 F.3d 976, 979-80 (1st _____________ ________ Cir. 1995) (citing United States v. Lam Kwong-Wah, 966 F.2d _____________ ______________ 682, 685 (D.C. Cir.), cert. denied, 506 U.S. 901 (1992)); _____ ______ United States v. Patterson, 38 F.3d 139, 143-44 (4th Cir. _____________ _________ 1994), cert. denied, 115 S. Ct. 1968 (1995). As such, drug _____ ______ quantity for purposes of 841(b) is determined by the sentencing court under a preponderance-of-the-evidence standard.5 See United States v. Barnes, 890 F.2d 545, 551 ___ _____________ ______ n.6 (1st Cir. 1989) (noting that court, not jury, determines drug quantity under 841(b)), cert. denied, 494 U.S. 1019 _____ ______ (1990); United States v. Lombard, 72 F.3d 170, 175-76 (1st ______________ _______ Cir. 1995) (explaining that "once convicted, a defendant has no right under the Due Process Clause to have his sentencing determination be confined to facts proved beyond a reasonable doubt," rather, applicable standard is preponderance of the evidence); Whiting, 28 F.3d at 1304 and n.5 (reaffirming _______  ____________________ 5. We note that, during the sentencing proceeding, Lindia argued that the government must prove drug quantity beyond a reasonable doubt, and that he had the right to a "jury trial on the question of quantity." The court told Lindia, "either you get a jury trial on the offense or not," remarked that this request was essentially an attempt to withdraw the guilty plea, and inquired if he sought to withdraw his plea. After consulting with his counsel, Lindia stood by his plea. -10- 10 preponderant evidence standard); see also McMillan v. ___ ____ ________ Pennsylvania, 477 U.S. 79, 91-93 (1986).6 ____________ Here, to assist in its determination of whether the conspiracy included the 150-pound lot, the district court had  ____________________ 6. Lindia cites McMillan v. Pennsylvania, 477 U.S. 79 ________ ____________ (1986), in support of his argument that due process requires proof of drug quantity beyond a reasonable doubt. McMillan, ________ however, expressed a due process concern where a state treats an element of a criminal offense as a sentencing factor, thus affording it less procedural safeguards. 477 U.S. at 84-88. Here, the quantity of drugs in this federal offense is not ________ one of the elements of the offense, see supra, but a settled ___ _____ sentencing factor. Moreover, this is not a case in which the drug quantity finding is "a tail which wags the dog of the substantive offense," McMillan, 477 U.S. at 88, thereby ________ possibly triggering a higher burden of proof on the government. See United States v. Townley, 929 F.2d 365, 369 ___ _____________ _______ (8th Cir. 1991) (suggesting but not deciding that due process requires more than preponderant standard where inclusion of uncharged drug amounts produced 18-level increase in base offense level and seven-fold increase in sentencing range); United States v. Kikumura, 918 F.2d 1084, 1102 (3d Cir. 1990) _____________ ________ (holding that clear-and-convincing evidence standard applies to justify a twelve-fold, 330-month departure from guideline range median); cf. United States v. Lombard, 72 F.3d 170, 176 ___ _____________ _______ (1st Cir. 1995) (holding that sentencing court may depart downward where uncharged, enhancing conduct of acquitted murder charge increased sentence from 262-327 months' to mandatory life term). Without expressing any opinion as to the holdings of Townley and Kikumura, we note that, unlike those cases _______ ________ (and Lombard, as well), this case does not involve a _______ sentencing enhancement or departure based on uncharged _________ conduct. Here, Lindia pleaded guilty to every element of the offense charging a marijuana conspiracy between December 1994 and January 31, 1995; and the sentence squarely punishes that offense of conviction. See United States v. Harrison- ___ ______________ _________ Philpot, 978 F.2d 1520, 1524 (9th Cir. 1992) (holding _______ inapplicable tail-wagging-dog concerns where disputed drug- quantity pertained only to sentence for convicted conduct), cert. denied, 508 U.S. 929 (1993). In short, this is simply _____ ______ not a case in which due process required anything more at sentencing. -11- 11 the benefit of the videotape of the hotel meeting and Lindia's own testimony at the sentencing hearing. The transcript from the hotel meeting clearly reveals Lindia's (and Aguirre's) stated desire and agreement to provide Cunniff with 150 to 200 pounds of marijuana. The discussion included details such as the identification of the shipment's source, the capacity of the vehicle to transport the marijuana, and the number of days for delivery. Thus, there was sufficient, reliable evidence from which the court could find, by a preponderance of the evidence, that the conspiracy included the 150-pound lot. To invoke the exception of application note 12, the court needed to be persuaded that Lindia did not have the intent and ability to produce the 150-pound lot. Wihbey, 75 ______ F.3d at 777. The court was free to reject, as it did, Lindia's claim that the discussion of the 150 pounds was mere "puffing" to impress the buyer into future negotiations. See ___ Whiting, 28 F.3d at 1305 (refusing to disturb sentencing _______ court's rejection of "puffing" claim); see also United States ___ ____ _____________ v. DeMasi, 40 F.3d 1306, 1322 n.18 (1st Cir. 1994) (noting ______ that sentencing court's choice between supportable plausible inferences cannot amount to clear error), cert. denied, 115 _____ ______ S. Ct. 947 (1995). Lindia did not prove to the court that he lacked the intent and ability to produce the negotiated amount; rather, based on the evidence presented, the court -12- 12 affirmatively found that he had both. We discern no clear error in the court's finding that the 150 pounds of marijuana were part of the conspiracy and, as such, were includable under U.S.S.G. 2D1.1 to determine the offense statutory maximum and Guideline sentencing range.7 B. Career Offender Status __________________________  ____________________ 7. Lindia cites Neal v. United States, 116 S. Ct. 763 ____ _____________ (1996), in support of his contention that application note 12 "is inconsistent with established law." In Neal, the court ____ held that stare decisis required it to adhere to a prior _____ _______ statutory interpretation pertaining to the sentencing calculation of a certain drug, in the face of a newly conflicting methodology set forth in the Guidelines. 116 S. Ct. at 768-69. Here, Lindia cites no controlling sentencing precedent with which application note 12 actually conflicts. Rather, Lindia cites cases affirming the general principle that the object of a conspiracy is an element of the offense and must be proven beyond a reasonable doubt. See United ___ ______ States v. Bush, 70 F.3d 557, 561 (10th Cir. 1995) (holding ______ ____ that in a multiple-object conspiracy conviction, where it is impossible to tell which controlled substance was the object of conviction, defendant must be sentenced based on objective yielding lowest offense level), cert. denied, 116 S. Ct. 795 _____ ______ (1996). Lindia contends that because specific intent to effectuate the substantive offense must be proven for a conspiracy conviction, application note 12 conflicts with "long-established law for identifying the object of a conspiracy" because it permits inclusion of a drug quantity even if the defendant did not have the intent to produce that quantity. Here, unlike Bush, the indictment specifies only ____ one controlled-substance object of the conspiracy: possession with intent to distribute marijuana. Lindia's guilty plea waived the government's burden to prove that object. Had the case gone to trial, the government would not have had to prove any specific amount of drugs for a conviction. Campbell, 61 F.3d at 979. Thus, application note 12 is ________ simply part of the Sentencing Commission's permissible methodology for employing the penalty provisions pertaining to quantity set forth in 841(b); it does not remove from the government's burden an element of the conspiracy offense. -13- 13 The district court sentenced Lindia as a career offender under 21 U.S.C. 994(h) due to two previous drug distribution offenses and the instant offense. See U.S.S.G. ___ 4B1.1. Lindia challenges this aspect of his sentence, arguing first, that conspiracy to commit a controlled substance offense should not trigger career offender status, and second, that the court should not have counted as a predicate offense a Rhode Island charge to which Lindia pleaded nolo contendere. ____ __________ -14- 14 1. Conspiracy As Predicate Offense ___________________________________ In 1994, this court joined a number of our sister circuits in holding that, in U.S.S.G. 4B1.2, comment. (n.1), the Commission properly designated conspiracy to __________ commit a "crime of violence or a controlled substance offense" as a triggering or predicate offense for career offender purposes, even though conspiracy convictions are not listed in the body of the pertinent guidelines or in 28 U.S.C. 994(h). United States v. Piper, 35 F.3d 611, 618- ______________ _____ 619 (1st Cir. 1994) (citing cases), cert. denied, 115 S. Ct. _____ ______ 1118 (1995). On appeal, Lindia invites us to reconsider Piper and join those circuits holding that conspiracies to _____ commit the crimes defined in 994(h) do not fall within its purview. See e.g., United States v. Mendoza-Figueroa, 28 ___ ____ ______________ ________________ F.3d 766 (8th Cir. 1994), cert. denied, 116 S. Ct. 939 _____ ______ (1996). We decline the invitation and adhere to our controlling precedent, thus affirming the use of the instant conspiracy conviction to trigger the career offender provisions. 2. The Rhode Island Nolo Contendere Plea _________________________________________ In 1986, Lindia pleaded nolo contendere to a Rhode ____ __________ Island charge of possession with intent to deliver marijuana ("the 1986 charge"). On this plea, the state court adjudged Lindia "guilty as charged and convicted" and gave him a deferred sentence. Lindia argues that the 1986 charge is not -15- 15 a "conviction" under Rhode Island law and therefore cannot constitute a predicate offense for purposes of career offender status. We have previously addressed the issue of whether or not a nolo contendere plea and subsequent disposition in ____ __________ Rhode Island constitutes a "conviction" for federal sentencing purposes. See United States v. Patrone, 948 F.2d ___ _____________ _______ 813, 816-17 (1st Cir. 1991), cert. denied, 504 U.S. 978 _____ ______ (1992). Patrone involved sentencing under the armed-career- _______ criminal statute, 18 U.S.C. 924(e), which specifically provides that state law determines whether or not a state _____ disposition constitutes a "conviction." Id. at 816; see 18 ___ ___ U.S.C. 921(a)(20). By contrast, for purposes of the career offender provisions, whether or not a state disposition constitutes a "conviction" is determined by reference to federal law and the Guidelines. See United States v. Pierce, ___ _____________ ______ 60 F.3d 886, 892 (1st Cir. 1995) (analyzing Guidelines provisions in concluding that state disposition on nolo ____ contendere plea constituted "conviction"), petition for cert. __________ ________ ___ _____ filed, (Oct. 19, 1995) (No. 95-6474). _____ After carefully analyzing the Guideline language and commentary, we held in Pierce that the guilt-establishing ______ event, such as a guilty plea, trial, or plea of nolo ____ contendere, "determines whether and when there has been a __________ countable `conviction'" for purposes of the Career Offender -16- 16 guideline. 60 F.3d at 892. We concluded that a Florida offense, to which the defendant pleaded nolo contendere and ____ __________ that resulted in a "withheld adjudication," constituted a countable "conviction" under the Career Offender guideline. Id. Similarly, Lindia's nolo contendere plea, subsequent ___ ____ __________ adjudication, and deferred sentence also constitute a "conviction" for career offender purposes. See also United ___ ____ ______ States v. Cuevas, 75 F.3d 778, 780-83 (1st Cir. 1996) ______ ______ (holding, under federal standards, that Rhode Island disposition on nolo contendere plea is a "conviction" for ____ __________ immigration law purposes). Moreover, there is little doubt that the 1986 charge would constitute a conviction under Rhode Island law. In Patrone, we explained that under R.I. Gen. Laws 12-18- _______ 3(a), a nolo contendere plea will not constitute a ____ __________ "conviction for any purpose" if the court places the defendant on probation and the defendant completes probation without violating its terms. 948 F.2d at 816, n.1. Section 12-18-3(b) further provides, however, that subdivision (a) "shall not apply to any person who is sentenced to serve a term in the adult correctional institution or who is given a suspended or deferred sentence in addition to probation." As explained in Patrone, we interpret this provision to mean _______ that a nolo contendere plea followed by a deferred sentence ____ __________ -17- 17 (or other sentence described in 12-18-3(b)) constitutes a "conviction" under Rhode Island law. See id. ___ ___ Lindia contends that our analysis in Patrone is _______ inapplicable, reading much into 12-18-3(b)'s language: "or deferred sentence in addition to probation." (emphasis __ ________ __ _________ added). Lindia claims that he was not placed on "probation" for the 1986 charge, rather, he "entered probationary status based solely on an agreement with the Rhode Island Attorney General." The record before this court is less than clear on this issue. It is apparent, however, that although Rhode Island law provides for a special circumstance in which a nolo contendere plea and successful completion of probation ____ __________ will not constitute a conviction, that circumstance will not apply where the defendant is also given a sentence of imprisonment, or a suspended or deferred sentence. See R.I. ___ Gen. Laws 12-18-3. Thus, even assuming that Lindia was not placed on probation, the controlling fact is that he was given a deferred sentence, thus rendering the benefits of 12-18-3(a) inapplicable. Lindia cites to no other applicable Rhode Island law in which a nolo contendere plea ____ __________ will not constitute a conviction.8  ____________________ 8. R.I. Gen. Laws 12-19-19 provides, inter alia, that if _____ ____ the court defers sentencing on a plea of guilty or nolo ____ contendere, it may actually impose a sentence only within a __________ certain time period unless the defendant is otherwise sentenced to prison during that period, in which case the time for imposing sentence is extended. This section says nothing about whether or not the plea, followed by the -18- 18 Under both federal and state law standards, the district court properly counted Lindia's 1986 charge as a conviction for purposes of the career offender adjudication. C. Authority to Depart Downward Based on Overrepresentation _____________________________________________________________ in Career-Offender Criminal History Category ____________________________________________ Lindia contends that the criminal history category of VI, calculated pursuant to his career offender status, significantly overrepresents his criminal history. The district court ruled that nothing in the career-offender statute, 28 U.S.C. 994(h), or in the Guidelines permitted a downward departure on this basis.9 The First Circuit has not yet decided the permissibility of such a departure in a career offender case, see United States v. Morrison, 46 F.3d ___ _____________ ________ 127, 129 (1st Cir. 1995), although many of our sister circuits have answered this question in the affirmative, see ___ e.g., United States v. Spencer, 25 F.3d 1105 (D.C. Cir. ____ ______________ _______ 1994); United States v. Rogers, 972 F.2d 489 (2d Cir. 1992); _____________ ______ United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991); _____________ ______ United States v. Lawrence, 916 F.2d 553, 554 (9th Cir. 1990). _____________ ________ Pursuant to the Sentencing Reform Act of 1984, commencing at 18 U.S.C. 3551, 28 U.S.C. 991-998 (as  ____________________ deferred sentence, constitutes a "conviction." Based on the structure of 12-18-3, however, it is apparent that Rhode Island treats nolo contendere pleas as convictions unless the ____ __________ ______ defendant meets the provisions of 12-18-3. 9. The court did not indicate in any way whether or not it would depart if it had the authority to do so. -19- 19 amended), the United States Sentencing Commission promulgates Sentencing Guidelines that establish presumptive sentencing ranges for categories of defendants and offenses. Williams ________ v. United States, 503 U.S. 193, 195-96 (1992). Under 28 _____________ U.S.C. 994(h), The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and [has been convicted of a violent crime or felony drug offense and has a least two such prior convictions]. This statute is meant to ensure that the Commission's Guidelines provide that certain felony-recidivists receive maximum authorized sentences. See United States v. Labonte, ___ _____________ _______ 70 F.3d 1396, 1404 (1st Cir. 1995). The Career Offender guideline, U.S.S.G. 4B1.1, is the Commission's implementation of 994(h). See U.S.S.G. 4B1.1, comment. ___ (backg'd); Labonte, 70 F.3d at 1400-1401. The guideline _______ establishes the career-offender presumptive sentencing range by setting forth enhanced total offense levels -- by reference to offense statutory maximums10 -- and provides that "[a] career offender's criminal history category in  ____________________ 10. The First Circuit has upheld the Commission's interpretation that "maximum term" in 994(h) is the applicable unenhanced statutory maximum. See generally ___ _________ LaBonte, 70 F.3d 1396. _______ -20- 20 every case shall be Category VI," the highest category level. U.S.S.G. 4B1.1. The Sentencing Reform Act permits a sentencing court to depart from a Guidelines' presumptive sentencing range "only when it finds that `there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Williams, 503 ________ U.S. at 198 (quoting 18 U.S.C. 3553(b)); see also 28 U.S.C. ___ ____ 991(b)(1)(B) (providing that the Commission's purposes include "maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing guidelines"). Accordingly, the Guidelines provide that "a case that falls outside the linguistically applicable guideline's `heartland' is a candidate for departure." United States v. Rivera, 994 _____________ ______ F.2d 942, 947 (1st Cir. 1993); see U.S.S.G. Ch.I, Pt.A, ___ intro. comment. (4)(b). Such cases are deemed "unusual," and, by definition, the Commission (with some exceptions) has not "adequately" considered them within the meaning of 3553(b). Id. As Justice (then Chief Judge) Breyer ___ thoroughly explained in Rivera, the exceptions to this ______ principle are those several factors the Commission has explicitly rejected as permissible grounds for departure. -21- 21 Id. at 948-949 (also explaining that encouraged departures ___ are likely "reasonable" while discouraged departures require "unusual or special" circumstances); see also Williams, 503 ___ ____ ________ U.S. at 200 (concluding that departure based on expressly rejected factorconstitutesincorrect applicationofGuidelines). The Application Instructions for the Guidelines, set forth in U.S.S.G. 1B1.1, explain that after a sentencing court determines the offense level, the defendant's criminal history category, and the applicable guideline range, it then refers to certain provisions for "Specific Offender Characteristics and Departures" and "any other policy statement or commentary in the guidelines that might warrant consideration in imposing sentence." A guidelines policy statement, U.S.S.G. 4A1.3, specifically addresses the adequacy of a criminal-history category's reflection of a defendant's past criminal conduct. See also, ___ ____ U.S.S.G. Ch.5, Pt.H, intro. comment. and 5H1.8 (stating that criminal history is relevant in determining if sentence should be outside applicable guideline range). Section 4A1.3 explicitly recognizes that a defendant's criminal history category may "significantly over-represent[] the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. 4A1.3, (policy statement). In such cases, the sentencing court may consider a downward departure. Id. We agree with our sister ___ -22- 22 circuits (that have considered the issue) that a sentencing court may invoke 4A1.3 to depart downward from the career- offender category if it concludes that the category inaccurately reflects the defendant's actual criminal history, within the meaning of 18 U.S.C. 3553(b). See ___ e.g., United States v. Spencer, 25 F.3d 1105, 1113 (D.C. Cir. ____ _____________ _______ 1994); United States v. Rogers, 972 F.2d 489, 494 (2d Cir. ______________ ______ 1992); United States v. Bowser, 941 F.2d 1019, 1024 (10th _____________ ______ Cir. 1991); United States v. Lawrence, 916 F.2d 553, 554-55 _____________ ________ (9th Cir. 1990). The district court interpreted Congress's mandate in 994(h) and the Commission's implementation, U.S.S.G. 4B1.1, as precluding departure on the basis of overrepresentation in all cases in which the defendant is assigned a criminal history category of VI under the Career Offender guideline. Section 994(h), however, is directed to the Commission's duty to formulate guidelines pertaining to categories of defendants, not to sentencing courts faced with individual defendants. As explained above, Congress and the Commission have rejected rigid sentencing schemes by empowering the sentencing court to consider factors that might comprise an "unusual" case. The Commission has not designated as a "forbidden departure" the overrepresentation of a criminal history category in career offender cases, see ___ Rivera, 994 F.2d at 948-49, and "there is nothing unique to ______ -23- 23 career offender status which would strip a sentencing court of its `sensible flexibility' in considering departures." Rogers, 972 F.2d at 493. ______ A district court that considers numerous Guidelines cases has a "special competence" to determine the "ordinariness" or "unusualness" of a particular case. Rivera, 994 F.2d at 951. When faced with a departure motion ______ in a career-offender case, as in other cases, the court's experience and unique perspective will allow it to decide if the case before it falls outside the guideline's "heartland," warranting departure. See Rivera, 994 F.2d at 952 (holding ___ ______ that appellate court reviews "unusualness" determination with "respect" for sentencing court's "superior `feel' for the case" (citation omitted)). Because the district court in this case did not consider whether or not the career-offender criminal history category overrepresented Lindia's circumstances, so as to make his case "unusual," we remand for its determination of this issue.11 III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, we affirm in part, ______ vacate in part and remand for proceedings consistent with ______ ______  ____________________ 11. The government, both in its brief and at oral argument, conceded that the court had the authority to depart on this basis and stated that, should we agree, remand for resentencing would be appropriate. -24- 24 this opinion. -25- 25