USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 96-2042 UNITED STATES OF AMERICA, Appellee, v. ALINA PEREZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Lenore Glaser with whom Stern, Shapiro, Weissberg & Garin was on _____________ _________________________________ brief for appellant. Michael J. Pelgro, Assistant United States Attorney, with whom __________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ January 23, 1998 ____________________ ALDRICH, Senior Circuit Judge. Defendant-appellant ____________________ Alina Perez, convicted of federal controlled substance offenses and with a record of prior state controlled substance offenses, was sentenced as a career offender under the United States Sentencing Guidelines. She had asked for a downward departure, and appealed its denial. We remanded for clarification, and she is now here again, no better off. Perez's indictment in the District Court for the District of Massachusetts was on one count of conspiracy to distribute heroin and four counts of possession and distribution of heroin in furtherance of the conspiracy, in violation of 21 U.S.C. 846 and 841(a)(1), respectively. She pled guilty to the conspiracy charge and to two of the distribution charges, and nolo contendre to the other two _______________ distribution charges. Because of two prior state controlled substance felony convictions, she met the career offender definition of U.S.S.G. 4B1.1 (1995). Achieving career offender status meant an initial total offense level of thirty two, an automatic criminal history category of VI, the highest, and a guideline sentencing range of 151-188 months after a three point offense level reduction for acceptance of responsibility. At her first sentencing hearing, Perez did not dispute the literal applicability of the career offender provision, but contended that she was a "small player," -2- outside the heartland of career offender drug cases, because the amounts of drugs involved in her offenses, and her role in them, had been small. She accordingly requested a downward departure under 4A1.3,1 but the court refused. On appeal, we remanded for clarification of the court's basis, in light of United States v. Lindia, 82 F.3d 1154 (1st Cir. _____________ ______ 1996), which we had recently decided. At resentencing Perez again requested departure under 4A1.3. In response the court acknowledged Lindia, but stated that it was limited to ______ permissible considerations, or "factors," and that smallness of predicates was an impermissible consideration. In light of Congressional mandate, whether she was a small player was  ____________________ 1. Adequacy of Criminal History Category (Policy Statement) _____________________________________ . . . . . There may be cases where the court concludes that a defendant's criminal history category significantly over- represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines. -3- a "forbidden factor," beyond consideration for a downward departure. We quote. A statute, 28 U.S.C. 994(h), mandates that a "career offender" as defined in the statute receive a sentence at or near the maximum term authorized. See 4B1.1, Background. The definition ___ of controlled substance offense specifies the minimum severity of offense that qualifies as one of the two offenses, that, at minimum, are needed to invoke the Career Offender provision. Thus, the congressional mandate does not speak of the medium-level controlled substance offense as the heartland for determining whether a person is a Career Offender. Instead, the minimum level offense that is sufficient to qualify for meeting the Career Offender test is within the heartland, by statutory mandate. The court added, as to which there is no complaint, that it would have granted a departure had it had discretion to do so. It did, however, once the sentence range had been calculated without that departure, take the lowest permitted as the final figure on the ground of Perez's relatively small role in the offenses. We have two questions: (1) Whether, if an open matter, the court's construction was sound. (2) Whether, in light of Lindia, it was open. We answer both ______ questions in the affirmative. This court will not overturn a refusal to depart from the federal Sentencing Guidelines unless the sentencing court abused its discretion. See Koon v. United States, 116 ___ ____ _____________ S. Ct. 2035, 2043 (1996). At the same time, whether consideration of a given factor is impermissible under any -4- circumstances is a question of law, and we need not defer to the district court's resolution. We start with 28 U.S.C. 994(h), that requires the Sentencing Commission to "assure" that the Guidelines produce sentences for certain three-time ("career") offenders that are "at or near the maximum term authorized" by statute.2 The Court, recognizing Congress's maximum intent, has held  ____________________ 2. The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant as eighteen years old or older and-- (1) has been convicted of a felony that is-- (A) a crime of violence; or (B) an offense described in section 401 of the C o n t r o l l e d Substances Act (21 U.S.C. 841) . . . ; and (2) has previously been convicted of two or more prior felonies, each of which is-- (A) a crime of violence; or (B) an offense described in section 401 of the C o n t r o l l e d Substances Act (21 U.S.C. 841) . . . . -5- this to be the term reached after applying any applicable statutory enhancements. United States v. LaBonte, 117 S. Ct. _____________ _______ 1673 (1997) (6-3), rev'g United States v. LaBonte, 70 F.3d _____ _____________ _______ 1396 (1st Cir. 1996) (2-1). The Commission implemented 994(h) with Guidelines 4B1.1,3 that computes sentences for career offenders based on the identical but re-termed "offense statutory maximum." In our LaBonte decision, _______ finding broad discretion in the Commission, we upheld a prior version of 4B1.1's Application Note 2 that excluded statutory enhancements from the words "offense statutory maximum." Then, between our decision and its reversal, we held, broadly, in United States v. Lindia, 82 F.3d 1154, ______________ ______ 1164-65 (1st Cir. 1996), that a district court might consider a career offender's criminal history "unusual," and outside the "heartland" of career offender cases, and, if so, that 4A1.3 allowed downward departure. We made no review or analysis of the type of criminal history involved, but simply noted that this departure turned on whether career offender treatment inaccurately reflected criminal history within the  ____________________ 3. U.S.S.G. 4B1.1 provides that a defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. -6- meaning of 18 U.S.C. 3553(b),4 id. at 1165, viz., whether ___ a career offender defendant's particular history had been adequately considered by the Commission in formulating the Guidelines. We note, by way of initial observation, at least, something of a puzzlement: in light of the Congressional stricture "at or near," how to reconcile Congress's clear purpose of maximum sentences for three-time violent or drug offenders, id. at 1164, with allowing adjustments5 or ___ downward departures by 4A1.3 which might be sizeable? Does that mean that "at or near" should be broadly construed to permit substantial reductions when they are applicable? Does it suggest possible non-recognition of some type or types of  ____________________ 4. 18 U.S.C. 3553(b) provides, in relevant part: (b) Application of guidelines in imposing a sentence. -- The court shall impose a sentence of the kind, and within the range, [provided by the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 5. The Guidelines specifically authorize application of 3E1.1 (acceptance of responsibility) to career offenders. Whether 3B1.2 (mitigating role in instant offense) also may apply is unsettled. Compare United States v. Beltran, 122 _______ _____________ _______ F.3d 1156, 1160 (8th Cir. 1997); United States v. Morales- ______________ ________ Diaz, 925 F.2d 535, 540 (1st Cir. 1991); with United States ____ ____ _____________ v. Williams, 37 F.3d 82, 84 (2d Cir. 1994); United States v. ________ _____________ Alvarez, 914 F.2d 213, 214-15 (10th Cir. 1990). _______ -7- adjustments or departures applicable to ordinary defendants? We find no pertinent legislative history. In LaBonte the _______ Court remarked, "This statutory phrase unquestionably permits a certain degree of flexibility for upward and downward departures and adjustments." 117 S. Ct. at 1678. The word "certain" was not defined. Since adjustments and departures could well achieve a substantial reduction from the maximum authorized term, it is not surprising that wide variations have developed as to what is perceived to be within "at or near" and, accordingly, the degree of flexibility allowed to the courts.6 In our LaBonte decision alone the majority, stating there must be _______ some "play in the joints," accepted a sentence 61.4% of what it thought the applicable statutory maximum, 70 F.3d at 1409- 10, while the dissenter thought even 72.8% would not be  ____________________ 6. See United States v. Novey, 78 F.3d 1483, 1487 n.5 (10th ___ _____________ _____ Cir. 1996) (noting that a sentence 91% of the statutory maximum was "near" but that 73% was not), cert. denied, 117 ____________ S. Ct. 2407 (1997); United States v. Moralez, 964 F.2d 677, _____________ _______ 683 n. 5 (7th Cir.) (noting that a sentence 83% of the statutory maximum "may well be short of being 'at or near the maximum term authorized'"), cert. denied, 506 U.S. 903 _____________ (1992); see generally United States v. Branham, 97 F.3d 835, _____________ _____________ _______ 846-47 (6th Cir. 1996); United States v. Hernandez, 79 F.3d ______________ _________ 584, 598-99 (7th Cir. 1996), cert. denied, 117 S. Ct. 2407 ____________ (1997); United States v. Fountain, 83 F.3d 946, 952-53 (8th _____________ ________ Cir. 1996), cert. denied, 117 S. Ct. 2412 (1997); United _____________ ______ States v. Gardner, 18 F.3d 1200, 1202 (5th Cir.), cert. ______ _______ _____ denied, 513 U.S. 879 (1994); United States v. Norflett, 922 ______ ______________ ________ F.2d 50, 53 n. 4 (1st Cir. 1990); United States v. Hays, 899 _____________ ____ F.2d 515, 520-21 (6th Cir.) (Merritt, C.J., dissenting), cert. denied, 498 U.S. 958 (1990); United States v. Alves, ____________ _____________ _____ 873 F.2d 495, 498 (1st Cir. 1989). -8- "near." Id. at 1418. In the present case the district ___ court, supra, even while excluding smallness of predicates as _____ a ground for departure, ended by imposing a sentence 63% of the maximum authorized by giving Perez the benefit of accepting responsibility.7 Had it been free to depart downward because of the smallness of the offenses, the court indicated that it would have sentenced Perez to a mere 21 months (9%), within the range applicable without 4B1.1. This extended recital, if it does nothing else, reveals a picture that supports the conclusion that the Commission, commanded to "assure" that the Guidelines produce near maximum sentences for the statutorily defined category of recidivists, did not want to leave open to the courts a departure from the statutory figure based on the size of the offenses. We believe it made this clear by adopting a single, broad definition of "felony."8 Second, it adopted a single criminal history category rather than a sliding scale based on the seriousness of the past offenses. Compare _______  ____________________ 7. The applicable statutory maximum was 20 years (240 months). Under the Guidelines, Perez's applicable sentencing range initially was 210-262 months. Crediting her for accepting responsibility brought her applicable range to 151- 188 months. The court then, within its discretion, chose the low end, 151 months, 63% of 240 months, for the recognized small role in the offenses. 8. We note that "felony" for 4B1.1 purposes includes both large and small offenses. See 4B1.2, Commentary (defining ___ felony as an "offense punishable by death or imprisonment for a term exceeding one year."). -9- 4B1.1 (assigning criminal history category VI to "every" career offender "case"), with 4A1.1 and Ch. 5, pt. A, ____ Sentencing Table (determining criminal history category for non-career offenders by the number of accumulated criminal history points). With such deliberate uniformity, how is a court suddenly to determine, at the low end when all other degrees of seriousness had been treated equally, special terms for one group? And on what basis?9 For ordinary offenders, where there is a sliding point scale, the curve may be thought to continue. Here there is no curve at all.  Perhaps the best answer to defendant's claim lies in the district court's proffered alternative: removing her from the career offender category entirely. Thus if downward departure was possible based on the smallness of the offenses, we would have a provision -- whose sole purpose is special, substantially increased sentences for repeat offenders that meet a specific description -- completely read out of the Guidelines by a judicial finding that the Commission could not really have intended to include what it said it did. This cannot be the purpose of downward departures. Rather, we hold that every offender whose offenses meet the statutory career offender definition is  ____________________ 9. To put this in mathematical terms, suppose a court rates seriousness of the offense at 1-20. On what basis can it determine that number 1 was unusual, and that the Commission had not thought of it, and that if it had thought it would not have applied the even treatment it gave 2-20? -10- within the intended heartland, and departure is available only for those personally, and not by the size of the offenses, demonstrating an absence of recidivist tendencies.10 This conclusion accords with the statutory purpose. To speak the obvious, the unique feature of the career offender provision is its focus on recidivism. To return to Labonte, 117 S. Ct. at 1677, "Congress has expressly provided _______ enhanced maximum penalties for certain categories of repeat offenders in an effort to treat them more harshly than other offenders." Congress itself defined the felonious conduct whose repetition, reflecting habituality and/or  ____________________ 10. We have no quarrel with the principle that there may be downward departures because of individual circumstances in literal career offender cases that indicate the absence of recidivism. Cf. United States v. Collins, 122 F.3d 1297, ___ ______________ _______ 1306-07 (10th Cir. 1997) (age and infirmity of defendant, and fact that one predicate conviction was close to ten years prior to the instant offense); United States v. Fletcher, 15 _____________ ________ F.3d 553, 557 (6th Cir. 1994) (combination of defendant's extraordinary family responsibilities, the age of his predicates, the time intervening between the predicates, and his attempts to deal with drug and alcohol problems); United ______ States v. Shoupe, 988 F.2d 440, 447 (3d Cir. 1993) ______ ______ (defendant's age and immaturity at time of predicates, temporal proximity of predicates, and fact that predicates occurred nearly fifteen years before the instant offense); United States v. Clark, 8 F.3d 839, 845 (D.C. Cir. 1993) ______________ _____ (exposure to domestic violence and childhood abuse that "significantly affected [defendant's] predisposition to commit his first two crimes"); United States v. Bowser, 941 _____________ ______ F.2d 1019, 1024-25 (10th Cir. 1991) (defendant's young age at the time of his predicates, close temporal proximity of the predicates, and fact that defendant had been punished concurrently for the predicates); United States v. Lawrence, _____________ ________ 916 F.2d 553, 554 (9th Cir. 1990) (psychiatrist's testimony that likelihood of recidivism was low). -11- incorrigibility, demands stiff punishment. When, in another circumstance, the Commission took a lower maximum, and we approved it in LaBonte, the Court reversed. Here we do not _______ think that the Commission even intended differentiation to be possible. It is true that some courts have, in part, allowed consideration of the "minor nature" of the past offenses, but none has adequately established a connection with recidivism.11 There remains the question whether it is open to us to make this decision. Clearly we are not foreclosed by Koon, a non-career offender case, whose general discussion ____ relates to matters not fully considered by the Commission. Koon does not advise us as to what factors meet that ____ definition in a career offender case. We are more concerned with our decision in Lindia, 82 F.3d at 1165, where we said, ______ speaking generally, that a sentencing court might depart downward on the basis of a career offender's criminal history if it considered it "unusual": When faced with a departure motion in a career-offender case, as in other cases, the court's experience and unique perspective will allow it to decide if the case before it falls outside the guideline's "heartland," warranting departure.   ____________________ 11. See United States v. Spencer, 25 F.3d 1105, 1113 (D.C. ___ _____________ _______ Cir. 1994); United States v. Smith, 909 F.2d 1164, 1169 (8th _____________ _____ Cir. 1990), cert. denied, 498 U.S. 1032 (1991). ____________ -12- We believe our decision in Lindia did not rule it was open to ______ a court to find smallness of offenses to make a career offender's case unusual, or go so far as to foreclose our holding that some parts of criminal history have been fully considered by the Commission. If it be felt that our unpublished memorandum order on remand here12 could be read as saying the opposite, it is not the law of the case, and we may reconsider. Affirmed. ________ - Dissenting opinion follows -  ____________________ 12. In view of our recent opinion clarifying that a sentencing court "may invoke 4A1.3 to depart downward from the career offender category if it concludes that the category inaccurately reflects the defendant's actual criminal history," United States v. Lindia, No. _____________ ______ 95-2200, slip op. at 21 (1st Cir. April 18, 1996), together with our uncertainty whether the district court made a discretionary decision not to depart or, instead, viewed its authority as more restricted than Lindia allows, we vacate ______ the sentence and remand for further consideration. -13- LYNCH, Circuit Judge, dissenting. With respect for LYNCH, Circuit Judge, dissenting. _____________ the views of my colleagues, I am compelled to dissent. In my mind, the majority opinion misreads the controlling statute and the United States Sentencing Guidelines, and is contrary to the precedent of the Supreme Court, this court, and the decisions of each of the other circuit courts which have considered the issue. Our holding in United States v. ______________ Lindia, 82 F.3d 1154 (1st Cir. 1996) directly controls this ______ case, as does the Supreme Court's holding in Koon v. United ____ ______ States, 116 S. Ct. 2035 (1996), and those cases require ______ reversal. The sole issue to be decided is whether departures under U.S.S.G. 4A1.3 are categorically prohibited for defendants classified as career offenders under U.S.S.G.  4B1.1 when the defendant's prior criminal record may over- or understate the seriousness of the offenses and the district court could find that this defendant was not in the heartland of career offenders.13 The district court concluded that  ____________________ 13. The career offender provisions are triggered by two prior convictions. The quantities of drugs and Alina Perez's role in the prior offenses are documented in the record of the district court. Ms. Perez, a heroin addict, sold drugs for $60 to an undercover police officer in 1987, and pled guilty to distribution of heroin and cocaine in 1988. In 1991, Ms. Perez was arrested for distribution of cocaine. In fairness to the government, it should be noted that there were three other state court drug convictions which the defendant successfully vacated before her federal sentencing. In addition, after her federal sentence, she pled guilty to another state cocaine distribution charge and received a five -14- 14 such a categorical prohibition deprived it of discretion to consider whether Perez's criminal history category overstated the seriousness of her prior crimes and therefore whether Perez could receive a downward departure. The district court decided that it had no discretion to depart, but said that, if it were permitted, it would have granted a downward departure.14 On this question of law, the district court was in error; it was not forbidden from considering whether defendant's offenses fall within the heartland or were atypical. Offenders, such as defendant Perez, who have two prior felony convictions for controlled substance offenses are automatically placed in criminal history category VI (the highest criminal history category) and assigned an offense level determined by the "offense statutory maximum" under  ____________________ year sentence concurrent with her federal sentence. In this federal offense, Perez was arrested for possession of 13.641 grams of heroin. Without the application of the career offender guidelines, her sentencing range would have been 18 to 24 months. Because she was a career offender, her sentencing range jumped to 151 to 188 months. 14. It is settled law that great deference is accorded to a district court's determination that a case falls outside of the heartland. When, as in this case, the district court decides that a case is so unusual that a departure is warranted, deference is owed to its "special competence" in deciding whether the case before it is a heartland case. See, e.g., Koon, 116 S. Ct. at 2046-47; Lindia, 82 F.3d at _________ ____ ______ 1165; United States v. Rodriguez-Cardona, 924 F.2d 1148, 1157 _____________ _________________ (1st Cir. 1991). The majority's concerns about "special treatment for one group" are misplaced. Every departure raises the same difficult issue of separating an unusual case from ordinary cases. -15- 15 U.S.S.G. 4B1.1. The Guidelines sentencing table mandates a sentencing range (in this case 151 to 188 months) where the defendant's criminal history category and offense level intersect. Section 4A1.3 allows a sentencing court to grant a departure from the sentencing range mandated by the Guidelines when the "defendant's criminal history [is] significantly less serious than that of most defendants in the same criminal history category . . . ." The majority concludes that departures under  4A1.3 based on an offender's criminal history are categorically forbidden for career offenders. This conclusion derives from the majority's misreading of 28 U.S.C. 994(h). The majority's conclusion depends upon its assertion that 994(h) requires the Sentencing Commission to "produce" sentences for three-time ("career") offenders that are "at or near the maximum term authorized" by statute. That assertion is not correct. What the statute actually says is: "The Commission shall assure that the guidelines ____________________________ specify a sentence to a term of imprisonment at or near the _______ maximum term authorized for [career offenders]." 28 U.S.C.  994(h) (emphasis added). The Guidelines do indeed specify such sentences at or near the maximum for career offenders in U.S.S.G. 4B1.1. But nothing in 994(h) requires that every offender who _____ falls under the Guidelines provisions for career offenders -16- 16 receive the maximum sentence. The Guidelines were designed to allow for departures when appropriate, and departures are permissible in exceptional cases. See Lindia, 82 F.3d at ___ ______ 1165 ("Section 994(h), however, is directed to the Commission's duty to formulate guidelines pertaining to categories of defendants, not to sentencing courts faced with individual defendants."); United States v. Novey, 78 F.3d ______________ _____ 1483, 1489 (10th Cir. 1996) ("Section 994(h) does not mandate that each individual defendant receive a sentence 'at or near the maximum term authorized.' Rather, the statute directs the Commission to assure that the guidelines specify such a term for 'categories of defendants' in which the defendant is a recidivist violent felon or drug offender."). Because of the misreading by the majority, it is important to clarify the proper method for determining whether a departure is warranted under U.S.S.G. 4A1.3. Section 4A1.3 is concerned with the accuracy of the defendant's criminal history category. Under U.S.S.G.  4A1.3, the point of reference for departures is a comparison with the other offenders in the defendant's criminal history category. The proper departure inquiry in this case is to compare the defendant to the "typical" or "heartland" criminal history category VI offender. As 4A1.3 says: There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the __ -17- 17 likelihood that the defendant will commit further crimes. . . . The court may conclude that the defendant's criminal ___________________________ history was significantly less serious than _____________________________________________ that of most defendants in the same criminal _____________________________________________ history category . . . and therefore consider ________________ a downward departure from the guidelines. U.S.S.G. 4A1.3 (emphasis added) The question is not whether the previous offenses were "small" but rather whether the offender's criminal history is so "significantly less serious" than that of the heartland criminal history category VI offender (not just other career offenders) that a departure is warranted. Cf. United States v. ___ _____________ Reyes, 8 F.3d 1379, 1384 (9th Cir. 1993) (proper comparison is _____ with other offenders). In addition to its misreading of the controlling statute, the majority ignores the plain language of U.S.S.G.  4A1.3. Section 4A1.3 repeatedly states that a departure may be granted if "the criminal history category does not reflect the seriousness of the defendant's past criminal conduct or the __ likelihood that the defendant will commit other crimes." (emphasis added). The Guideline's use of the word "or" instead of "and" is telling. Under 4A1.3, a defendant's "past criminal conduct" may alone justify a departure, apart from his likelihood _____ of recidivism. The majority's attempt to distinguish the overwhelming precedent contrary to its decision on the grounds that these other cases did not establish a connection with recidivism is contrary to the plain meaning of 4A1.3. In any -18- 18 event, an offender's criminal past is an excellent (perhaps the best) predictor of his likelihood of recidivism. Nor does the majority consider that upward departures from criminal history category VI are explicitly endorsed by  4A1.3, based on "the nature of the prior offenses." This court has routinely approved such upward departures for repeat offenders based on their prior bad acts. See, e.g., United _________ ______ States v. Black, 78 F.3d 1, 8 (1st Cir. 1996); United States v. ______ _____ _____________ Parkinson, 44 F.3d 6, 10 (1st Cir. 1994). Under the majority _________ opinion, 4A1.3 becomes a one-way rachet; upward departures may be granted based on prior offenses, but not downward departures. The plain language of 4A1.3 demonstrates that, except for the specific exception of criminal history category I offenders, both upward and downward departures are contemplated. Neither Congress nor the Sentencing Commission intended such a lack of even-handedness. In addition to misreading the controlling statute and the language of the Guidelines, the majority also misinterprets controlling precedent. The majority incorrectly implies that the Supreme Court's recent decision in United States v. LaBonte, 117 _____________ _______ S. Ct. 1673 (1997) undercuts our holding in Lindia that a ______ sentencing court may grant a career offender a downward departure if the court concludes that the guideline career offender criminal history category inaccurately reflects the defendant's -19- 19 criminal history. LaBonte has little bearing on the issue to be _______ decided in this case. LaBonte addresses the offense level axis of the _______ sentencing table, not the criminal history category axis. The issue in LaBonte was not departures but the meaning of the phrase _______ "offense statutory maximum" for purposes of computing an offender's offense level. The Court was asked to decide "whether, by 'maximum term authorized,' Congress meant (1) the maximum term available for the offense of conviction including any applicable statutory sentencing enhancements, . . . or (2) the maximum term available without such enhancements . . . ." LaBonte, 117 S. Ct. at 1675. _______ LaBonte concerned the structure of the Guidelines and _______ determined that, in order to assure that the "guidelines specify __________________ a sentence to a term of imprisonment at or near the maximum term authorized for [career offenders]" as mandated by 28 U.S.C.  994(h), the phrase "maximum term authorized" must "include all applicable statutory sentencing enhancements." LaBonte, 117 S. _______ Ct. at 1675. LaBonte does not, however, foreclose the _______ possibility of departures for unusual career offenders who fall outside the heartland.  Indeed, LaBonte cuts against the majority's holding. _______ In LaBonte, the Supreme Court remarked that 994(h) _______ "unquestionably permits a certain degree of flexibility for . . . downward departures . . . ." LaBonte, 117 S. Ct. at 1678. But _______ -20- 20 the Court was careful to point out that the "pertinent issue" in the case was "'not how close the sentence must be to the statutory maximum, but to which statutory maximum it must be close.'" Id. at 1678 (quoting United States v. Fountain, 83 F.3d ___ _____________ ________ 946, 952 (8th Cir. 1996)). LaBonte's reference to departures is _______ perhaps dicta, but this dicta further demonstrates that the majority misinterprets the case. This court has already decided the issue, in Lindia, ______ against the majority position. This court decided in Lindia that ______ "a sentencing court may invoke 4A1.3 to depart downward from the career-offender category if it concludes that the category inaccurately reflects the defendant's actual criminal history . . . ." Lindia, 82 F.3d at 1165. Lindia addressed precisely the ______ ______ issue we face in this case. Lindia noted that our circuit has ______ long recognized that when a case falls outside the applicable guideline's heartland, a departure may be warranted. Id. at ___ 1164. Lindia recognized that there were some factors that had ______ been "explicitly rejected as permissible grounds for departure" but held that the Commission had "not designated as a 'forbidden departure' the overrepresentation of a criminal history category in career offender cases." Id. at 1164-65. ___ Lindia's holding is consistent with the holdings of ______ each of the other circuit courts that have considered this issue, both before and after Lindia was decided. See, e.g., United ______ __________ ______ States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997) ("[F]or a ______ _______ -21- 21 defendant who technically qualifies as a career offender but whose criminal history and likelihood of recidivism significantly differ from the heartland of career offenders, the sentencing court may consider a departure from the career offender category."); United States v. Spencer, 25 F.3d 1105, 1113 (D.C. _____________ _______ Cir. 1994); United States v. Fletcher, 15 F.3d 553, 557 (6th Cir. _____________ ________ 1994); Reyes, 8 F.3d at 1383-84; United States v. Shoupe, 988 _____ ______________ ______ F.2d 440, 447 (3d Cir. 1993); United States v. Rogers, 972 F.2d _____________ ______ 489, 493-94 (2d Cir. 1992); United States v. Beckham, 968 F.2d _____________ _______ 47, 54 (D.C. Cir. 1992) (agreeing with "the unanimous judgment of the other circuit courts to have considered the issue that  4A1.3 authorizes a downward departure when criminal history category VI, assigned pursuant to the career offender guideline, significantly overrepresents the seriousness of a defendant's past criminal conduct and the likelihood of recidivism") (citing cases); United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir. _____________ ________ 1990); United States v. Brown, 903 F.2d 540, 545 (8th Cir. 1990). _____________ _____ In both Spencer and Reyes, our sister circuits held specifically _______ _____ that departures for career offenders are permissible under  4A1.3 when the defendant's predicate offenses were relatively minor. The majority opinion is also directly contrary to the Supreme Court's holding in Koon, and to the intent of Congress as ____ interpreted by Koon. Koon explained that "a federal court's ____ ____ examination of whether a factor can ever be an appropriate basis -22- 22 for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no . . . the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." Koon, 116 S. Ct. at 2051. Thus if a ____ factor is not expressly forbidden, it may at least in the exceptional case serve as the basis for a departure. Koon ____ explicitly states that "for the courts to conclude a factor [other than an explicitly forbidden factor such as race] must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission." Id. at 2050. ___ In Koon the Supreme Court expressly held that only a ____ few reasons for departure are entirely prohibited under the Guidelines, as the Guidelines do not limit the kinds of factors, whether or not mentioned anywhere else in the Guidelines, that could constitute grounds for departure in an unusual case. The only departure factors entirely forbidden by the Guidelines are: race, sex, national origin, creed, religion and socioeconomic status, see U.S.S.G. 5H1.10, lack of guidance as a youth, see ___ ___ U.S.S.G. 5H1.12, drug or alcohol dependence, see U.S.S.G.  ___ 5H1.4, and economic duress, see 5K2.12. In contrast, ___ departures for atypical criminal history, far from being a forbidden factor, are specifically encouraged under U.S.S.G.  4A1.3. See Collins, 122 F.3d at 1304 ("Because section 4A1.3 ___ _______ -23- 23 provides an encouraged basis for departure not already taken into account by the Commission, over-representation of a defendant's criminal history or likelihood for recidivism always will be an approved ground for departure."); Lindia, 82 F.3d at 1165. ______ The majority holds that, because the defendant's prior drug felonies are the reason she is categorized as a career offender, her prior crimes were already "adequately taken into account by the Sentencing Commission in formulating the guidelines," U.S.S.G. 5K2.0, and could not therefore serve as the basis of a departure. Koon explicitly addressed this issue, ____ and decided that if a Guideline already takes a certain factor into account, then the factor must be present to an "exceptional degree" before a departure may be granted. But Koon, contrary to ____ the reasoning employed by the majority, did not rule out such departures entirely. Under Koon, if an encouraged factor (e.g., ____ criminal history under 4A1.3) is already taken into account by a Guideline (as is criminal history in the career offender guideline), "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 116 S. Ct. at 2045. See also Lindia, 82 F.3d at ____ ________ ______ 1164-65; United States v. Rivera, 994 F.2d 942, 947-49 (1st Cir. _____________ ______ 1993). Under Koon, the majority's holding that departures under ____ 4A1.3 for career offenders are precluded by implication is -24- 24 incorrect. Departures for career offenders under 4A1.3 should be extremely rare, but it is wrong to forbid them entirely. Koon's holding that only expressly forbidden ____ departure factors may never serve as the basis for a departure has been, until today, regularly followed by this court, and thus the majority's position is in conflict with other of our precedent. See, e.g., United States v. Brewster, 127 F.3d 22, 26 _________ _____________ ________ (1st Cir. 1997) (noting that it is a "fundamental principle of departure jurisprudence: that, in the absence of an explicit proscription, courts generally should not reject categorically any factor as a potential departure predicate"); United States v. _____________ Clase-Espinal, 115 F.3d 1054, 1060 (1st Cir. 1997) (noting Koon's _____________ ____ instruction that "with few exceptions, departure factors should not be ruled out on a categorical basis"); United States v. _____________ Hardy, 99 F.3d 1242, 1249 (1st Cir. 1996) (stating that "a _____ departure criterion cannot be deemed impermissible in all circumstances unless categorically foreclosed by the Commission"). In Brewster, the court said that a "fundamental ________ lesson" of prior First Circuit caselaw is "'that a court should not infer from inexplicit Guidelines language, or from language that authorizes use of a particular factor in some cases, an absolute barrier in principle against using certain other factors as grounds for departure in other unusual circumstances.'" 127 F.3d at 27 (quoting United States v. Doe, 18 F.3d 41, 47 (1st _____________ ___ Cir. 1994)). -25- 25 In United States v. Olbres, 99 F.3d 28 (1st Cir. _____________ ______ 1996), this court interpreted Koon as dictating that even a ____ discouraged factor such as a defendant's vocational skills is not categorically prohibited as a basis for a departure. See id. at ___ ___ 34-35 ("Categorical interpretations 'would nullify the Commission's treatment of particular departure factors and its determination that, with few exceptions, departure factors should not be ruled out on a categorical basis.' . . . [E]ven if the present case merely concerned vocational skills, a per se approach would be inappropriate and the district court would still have to consider whether the case was in some way 'different from the ordinary case where the factor is present.'") (quoting Koon, 116 S. Ct. at 2045, 2051). In contrast to ____ vocational skills, departures under 4A1.3 for an overrepresentative criminal history category are specifically encouraged under the Guidelines. As Olbres and a host of our __________ ______ other opinions point out, Koon rejected categorical denials of ____ departures based on all but a few explicitly forbidden factors, such as sex and race. Departures under 4A1.3 for career offenders based on the nature of the defendant's involvement and the quantity of drugs in the prior offenses are not categorically foreclosed. The majority opinion effectively overrules Lindia, something a ______ subsequent panel does not have the power to do. See United ___ ______ States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995); Williams v. ______ ________ ________ -26- 26 Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995). Lindia is __________________ ______ directly on point, and has not been undercut by the controlling authority of LaBonte. Cf. Stella v. Kelley, 63 F.3d 71, 74 (1st _______ ___ ______ ______ Cir. 1995). The majority compounds its error by clouding its holding with a distinction based on the "type" of criminal history involved. The suggested distinction between "personal" versus "offense" criminal history is a distinction without a difference. An offender's criminal history category is computed based on that person's prior criminal acts, i.e., the offenses the person committed. The offenses in which the defendant participated define an offender's criminal history. ______ Our role is limited to deciding an issue of law: whether a departure based on the character of the defendant's prior offenses is ever permissible for career offenders. In accordance with Koon, our precedent, and the precedent of our ____ sister circuits, I would answer this question in the affirmative. The Supreme Court in Koon has committed, in the first instance, ____ the decision whether to exercise this discretion to grant allowable departures to the district court. See Koon, 116 S. Ct. ___ ____ at 2046-47. I would reverse the district court and remand the case for resentencing. -27- 27